GARDNER v. THE STATE.

1. A challenge to the array will not be sustained by proof that the sheriff neglected to procure and keep in his office, open to inspection, a list of the names of the persons in his county qualified to serve as jurors, as required by section 3 of the act of April 21st, 1876. *Rev., p.* 532. The provisions of that act, except that which relates to the certificate of the court before which the general panel is drawn, are directory only.

2. Section 129 of the Crimes act (*Rev., p.* 250) provides that "if any person shall steal of the money or personal goods and chattels of another, of or above the price or value of twenty dollars, every person so offending shall be deemed guilty of a misdemeanor," &c. An indictment under that section, which charges that the said L. G., on the day, &c., with force and arms, at, &c., certain goods and chattels of J. S., &c., unlawfully did steal, take and carry away, contrary to the form of the statute, &c., is sufficient. The indictment need not charge that the act was done feloniously or with felonious intent.

3. The word "steal" or "stealing" in a criminal statute, when unqualified by the context, signifies a taking which at common law would have been denominated felonious, and imports the common law offence of larceny.

4. The defendant bought a lot of jewelry at the store of S. Bros., to be delivered at her residence, to be paid for on delivery. The jewelry was delivered at defendant's residence by a messenger, in a covered box, with a C. O. D. bill. The box was handed to a servant, who opened the door; the defendant met the servant in the hall, and took the box and carried it upstairs. In a short time she returned with the box opened, and told the messenger there was no jewelry in it; that there was nothing in the box except a piece of lace trimming, which she exhibited. If the jewelry was in fact in the box, the defendant kept it and converted it to her own use. The bill for the jewelry was not paid, the defendant insisting that she had not received it. The court charged the jury that, if the defendant received the jewelry from the agent of S. Bros., and by a trick or device removed the jewelry from the package in which it was delivered, and substituted other goods for the purpose of converting the jewelry to her own use and depriving S. Bros. of their property, the defendant was guilty of larceny. *Held,* that these instructions, as applied to the facts of the case, were correct, and that the refusal of the court to incorporate in these instructions the words "with felonious intent" was not error.

5. A charge to the jury that "the defendant is entitled to the benefit of a reasonable doubt; the duty is on the state to prove to the satisfaction of the jury, beyond a reasonable doubt, that the defendant has

committed the specific crime with which she is charged in the indict-
ment; if the state fails to do so the defendant is entitled to an acquittal;
you are to decide this case simply upon the evidence produced here,
and in the consideration of that evidence to give the defendant the
benefit of every reasonable doubt that arises in your minds as to the
commission of the crime, and say on your oaths from the evidence
whether she is guilty or not"—is sufficient.

6. A judge is not required to adopt the form, or the words, or the collo-
cation of phrases, in which a request to charge is framed; and on a
request embracing several distinct legal propositions, if any one of the
set be improper, a general exception to the refusal to charge will be
unavailable.

7. Counsel appearing by the consent of the prosecutor of the pleas will be
allowed to take part in the prosecution of an indictment, although such
counsel has been retained and paid by private persons who are indi-
rectly interested in obtaining a conviction.

On error to the Essex Quarter Sessions.   On a judgment
of conviction for larceny.

Argued at February Term, 1892, before BEASLEY, CHIEF
JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the plaintiff in error, *William D. Daly* and *Theodore
F. Ryerson.*

For the state, *Samuel Kalisch.*

The opinion of the court was delivered by

DEPUE, J.   The first assignments of error are founded on
the decision of the court overruling a challenge to the general
panel of jurors.   A challenge to the array is an exception to
the whole body of jurors upon the panel summoned and re-
turned for service at the term, and is grounded upon some
default of the sheriff or other officer making the return, in
drawing or returning the jurors, or for partiality or miscon-
duct in performing the duties.   *Co. Litt.* 156a,156b; *3 Burn
Just.* 962, *"Juries;"  Thomp. & Merr. Juries,* § 126.

The specifications of the causes of challenge are that the
sheriff did not procure and keep in his office a list of the

names of the persons in his county qualified in law, with their places of abode, &c., open for the inspection of persons who desired to inspect and examine the same, as required by law. The challenge concludes that the sheriff's failure to make out and complete by the 1st day of January, 1891, a list of the names of the persons who, in said county of Essex, are qualified to serve as jurors therein, with their places of abode, by designating their respective townships and wards, deprives the accused of the benefit of a statutory right enabling her to inquire before the trial into the qualifications aforesaid, and to investigate the circumstances of the selection of the persons on such list, from which list the jurors are taken for her trial, thereby tending to prejudice and prevent her trial by an impartial jury, in violation of the constitution of the State of New Jersey.

There was another specification inserted in the written challenge—that of the fifty-five jurors drawn and returned as the panel for that term, fifty-three were from the city of Newark and none from other localities in the county. No challenge was preferred imputing to the sheriff unfairness or misconduct in preparing the list of names from which the general panel was drawn, and there is no statute or law requiring the jurors as drawn to come from the several political divisions of the county. For aught that appears, it may have been that in the original list there was a fair apportionment of names among the several political divisions of the county, and the preponderance of jurors from Newark on the panel may have resulted from the drawing of the names from the box.

· The third section of the act of April 21st, 1876, makes it the duty of the sheriff to procure every year at his own expense a list of the names of the persons who in his county are qualified to serve as jurors, with their places of abode, designating their respective townships and wards, said lists to be made out and completed by the 1st day of January of each year, and kept in the office of the sheriff, open to the inspection of all persons who may wish to examine the same, without charge. In this section it is further provided, that any

sheriff who shall neglect or refuse to comply with any or all of the provisions of this section shall forfeit the sum of $500 for every such offence, the one-half to be paid to the state and the other half to any person who shall prosecute the same, to be recovered with costs by action of debt in any court of record having cognizance of that sum. *Rev., p.* 532, § 42.

The testimony taken in support of the challenge shows that there were lists of jurors, made out by former sheriffs, kept in the sheriff's office, but none made by the sheriff then in office, and that it was customary for sheriffs to adopt the lists kept by their predecessors. It must be assumed that the lists then in the office were incomplete and imperfect, and it was shown that such lists were not used by the sheriff in selecting the names of qualified jurors from which the general panel was drawn. The moot question is whether the neglect of the sheriff to provide this list for use in his office, in conformity with section 3 of the statute, of itself will invalidate the panel drawn and certified to, without any proof of the sheriff's misconduct in preparing the list of names from which the general panel was drawn.

The fifth section of the act requires the sheriff, on the fourth Tuesday before the commencement of the regular term of the court, at the court-house, in the presence of the county clerk and before the Court of Common Pleas, to select "from among the residents of the county qualified to serve as jurors" the names of at least twice as many persons as the court shall deem necessary to be summoned as jurors, and then, in the presence of the clerk and the court, in an open and public manner, to draw out of the box separately as many of the papers on which the names of such qualified jurors are written respectively as the said court shall deem necessary to be summoned, &c.—two lists of the names to be certified to as the panel of jurors selected to serve, &c., under the hands of the judges of the Court of Common Pleas, or a majority of those present, who shall also certify that the jurors named in the said lists were selected in all respects according to the provisions of the said act. The section also enacts that, "If the judges

of the said Court of Common Pleas, or a majority of those present at the time, shall not certify as required by this section, it shall be good ground for a challenge to the array of jurors." *Rev., p.* 533, § 44.

The section just referred to contains the only prescription of the persons from whom the jurors shall be selected, and the mode in which the general panel shall be drawn. The persons whose names are to be selected and written on the ballots are " residents of the county qualified to serve as jurors," without any qualification with respect to their names being found on the list kept in the sheriff's office; and the certificate of the court is made the evidence that the jurors named in the lists certified to were selected in all respects according to the provisions of the act. The third section, which makes it the sheriff's duty to prepare and keep in his office a list of the names of persons qualified to serve as jurors, imposes a penalty upon the sheriff for the failure, to perform that duty, but neither expressly nor by implication invalidates the panel of jurors drawn in compliance with the fifth section as a consequence of the sheriff's neglect. If the jurors are in fact selected from the residents of the county qualified to serve as jurors, as prescribed by the latter section, the panel of jurors is lawfully constituted, without regard to the presence or absence of a list in the sheriff's office or imperfections in the list so kept. In that respect the third section is directory only. It was so in effect held in *Maffett* v. *Den,* 1 *Halst.* 228; and in *Poulson* v. *Union National Bank,* 11 *Vroom* 563, the Court of Errors held that the provisions of the act of April 21st, 1876, as to the proceedings in the selection of jurors are all merely directory, except that which requires the certificates of the judges. The general rule is that statutory provisions respecting the preparation of lists and the drawing of· the panel are regarded as directory only, and that irregularities therein are no ground of challenge, unless they are such as plainly operated to the prejudice of the challenging party. 1 *Thomp. Tr.,* § 33; *Thomp. & Merr. Juries,* §§ 134–139.

Another ground of challenge to the array was that the Court of Common Pleas before which the general panel was drawn was not legally constituted. If that ground of challenge be true in fact, it is fatal. *Patterson* v. *State*, 19 *Vroom* 382. At the session of the court at which the general panel was drawn, the law or presiding judge of the Court of Common Pleas was absent from the state, and the justice of the Supreme Court assigned to that circuit presided in his absence. The certificate so recites. The certificate is in all respects in conformity with the statute, and is signed by the presiding justice of the Supreme Court and one of the lay judges of the court. This objection is not tenable. *Engeman* v. *The State*, 25 *Vroom* 247.

The defendant was convicted under the first count of the indictment. That count is founded upon section 129 of the Crimes act. *Rev., p.* 250. This section is in these words: " If any person shall steal of the money or personal goods and chattels of another of or above the price or value of twenty dollars, every person so offending shall be deemed guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding five hundred dollars or imprisonment at hard labor not exceeding ten years, or both.".

The indictment charges that the said L. G., on the 23d day of December, 1890, with force and arms, at, &c., certain goods and chattels, describing them and the value of each, in all of the value of $21.75, the goods and chattels of J. S., &c., " unlawfully did steal, take and carry away, contrary to the form of the statute in such case made and provided."

The objection made to this count is that it is not charged that the act was done feloniously or with felonious intent. No motion was made to quash the count on this ground, and the objection was taken at the close of the case on a motion to direct an acquittal on the ground that no criminal offence was charged.

In the classification of criminal offences at common law felony was a *nomen generalis*, which comprised all offences which occasioned a forfeiture of either lands or goods, or

both, to which capital or other punishment was superadded according to the degree of guilt. 1 *Bouv. Law Dict.* 517, *tit.* " *Felony;*" 4 *Black. Com.* 95. In indictments for any one of the crimes embraced in the class of felonies, it was at common law the settled rule of pleading to charge the offence to have been committed feloniously, and this epithet could not be supplied by any other word or by any circumlocution. 4 *Bac. Abr.* 173, *tit.* " *Felony.*" In indictments for offences of the grade of misdemeanors the word " felonious" is improper ; the indictment should not charge the act to have been done feloniously; and if so charged, the word "feloniously," being repugnant to the legal import of the offence charged, will be rejected as surplusage. *Bish. Stat. Cr.,* § 439; *Whart. Cr. Pr. & Pl.,* §§ 260, 261; 1 *Bish. Cr. Pro.,* § 537. And when a statute makes that a felony which before was a misdemeanor, or creates a misdemeanor of what was before a felony, the old law is gone, and the accused can be indicted only under the new. *Bish. Stat. Cr.,* § 174; *Rex* v. *Pinn, Russ. & Ry.* 424; *Rex* v. *Cross,* 1 *Ld. Raym.* 711; *Rex* v. *Walford,* 5 *Esp.* 62; *Rex* v. *Gray,* 10 *Jur., N. S.,* 160.

In the Crimes act, which contains the body of the criminal law of this state, defining criminal offences and prescribing punishments therefor, neither the word "felony" nor "felonious" nor "feloniously" appears. Statutory offences, if designated at all, are called in the Crimes act either misdemeanors or high misdemeanors; and in that section of the act which was designed to round up and complete our criminal code, in providing for the punishment of offences of an indictable nature at common law, not provided for by that act or some other act of the legislature, it was declared that such offences should be deemed to be misdemeanors to be punished by fine or imprisonment as prescribed in that section. *Rev., p.* 261, § 192. The section on which this count of the indictment is founded expressly makes the offence a misdemeanor.

The general rule is that in framing an indictment founded upon a statute, it is sufficient to set out the offence in the words of the statute ; and in charging a misdemeanor in such

cases, it is not necessary to use the words "feloniously" or "unlawfully," unless such terms form part of the statutory definition of the offence. *Randall* v. *State*, 24 *Vroom* 485. In an indictment under section 135 of the Crimes act, which makes any person who shall "unlawfully and maliciously" take and steal any money, &c., from the person, indictable for a misdemeanor, this court held that it was not necessary to charge a felonious stealing and carrying away, and that the indictment sufficiently characterized the offence as an unlawful and malicious taking or stealing from the person in the language of the statute. *Randall* v. *State, supra*. So completely is the distinction between felonies and misdemeanors disregarded in our jurisprudence, that under the laws of this state a party indicted for a crime may be convicted of any offence of a lower degree, provided it is included within the description in the indictment, without regard to the question whether it was or was not technically a felony. *State* v. *Johnson*, 1 *Vroom* 185.

Nor is there any ambiguity or uncertainty in the meaning of the word "steal" in an indictment charging crime. In many of our criminal statutes the word "steal," "stealing" or "stolen" is used without being characterized or qualified by an adverb or adjective; and this mode of drafting criminal statutes extends back into colonial times. *Leam. & Spi.* 105. In *Dunnell* v. *Fisk*, 11 *Metc.* 551, 554, Chief Justice Shaw says: "The natural and most obvious import of the word 'steal' is that of a felonious taking of property, or larceny; but it may be qualified by the context." The word "steal" or "stealing" in a criminal statute, when unqualified by the context, signifies a taking which at common law would have been denominated felonious, and imports the common law offence of larceny. In an indictment setting out the offence in the language of the statute, and concluding "contrary to the form of the statute," these words have in common understanding the same signification. The indictment charges that the accused "unlawfully did steal, take and carry away" the goods

and chattels, &c., " contrary to the form of the statute," &c. We think the indictment is sufficient.

But if the indictment was informal in this respect, it would be no ground for a reversal. No motion to quash was made, and the objection was taken at the close of the case in the form of a request to direct an acquittal. The record shows that the defendant was not in anywise prejudiced in making her defence on the merits. The error complained of, even if it existed, could not have put the defendant to any disadvantage at the trial, and consequently cannot on error invalidate the judgment. *State* v. *Donnelly*, 2 *Dutcher* 463, 493 ; *State* v. *Robinson et al.*, 6 *Vroom* 71.

· Exception was also taken to the refusal of the court to accede to the request of the defendant's counsel to charge in these words : " That the state must prove all the elements of the larceny charged, viz., (a) the wrongful taking and carrying away of the goods mentioned by the accused; (b) the felonious intent of the accused to convert them to her own use or make them her property ; (c) that this was done without the consent of the owners ;· (d) the ownership of the goods and their value." The court declined to charge these propositions otherwise than as already charged. Counsel in his brief insists that, " However this request may have coincided with the general charge of the court in the whole, separate and . divided therein, as the said points of said request may have been charged upon, it was the legal duty of the court to have charged the said requests as submitted, if the same was in itself a good and legal request." The legal rule is otherwise. A judge is not required to adopt the form or words or the collocation of phrases in which the request to charge is framed ; and on a request embracing several legal propositions, if any one of the set be improper, a general exception to the refusal to charge as requested will be unavailable. *Noyes* v. *State*, 12 *Vroom* 418, 429 ; *Cliver* v. *State*, 16 *Id.* 46, 48.

All the matters contained in this series of propositions were either substantially charged or related to facts not in dispute,

except that the judge did not adopt the word "felonious" in defining the intent. He had instructed the jury that "Larceny is defined to be the unlawful taking by one person of the personal chattels of another, with the intent wrongfully to convert them to his own use without the consent of the owner." The bill for the goods which showed the price at which they were purchased was put in evidence, and sufficiently proved their value, and the ownership of the vendors was indisputable, unless the title passed by a concluded sale. The single question on this branch of the case is whether the judge was to embrace in his instruction the words "felonious intent."

In his commentary on the crime of larceny, Blackstone says: "The taking and carrying away must be felonious; that is, done *animo furandi*, or, as the civil law expresses it, *lucri causa.*" He adds that the ordinary discovery of a felonious intent is where the party doeth it clandestinely, or being charged with the fact denies it; but this is by no means the only criterion of criminality, for in cases that may amount to larceny, the variety of circumstances is so great and the complications thereof so mingled, that it is impossible to recount them all, of those which may be evidence of a felonious intent or *animum furandi*. 4 *Bl. Com.* 232. This definition has been criticised as indefinite and too narrow. 2 *Bish. Cr. L.*, §§ 842, 847, 848. The definition given by Mr. Archbold is that by felonious intent, or *animus furandi*, is meant an intent fraudulently to appropriate the goods to the taker's own use, or wholly to deprive the owner of them. 2 *Arch. Cr. Pr. & Pl.* 366. In commenting on the words *animo furandi* and *lucri causa*, Mr. Roscoe says: "The point aimed at by these expressions seems to be this, that the goods must have been *taken into the possession of the thief* with the intention of depriving the owner of his *property* in them." He adds: "Property is the right to the possession with an ability to exercise that right. Bearing this in mind, we may safely define larceny as follows: The wrongful taking *possession* of the goods of another with intent to deprive the

owner of his *property* in them. It is not necessary to add to this definition the words 'without any claim of right by the taker,' as that is excluded by the latter branch of the definition relating to the intent; nor is it necessary to say that the taking must be 'against the will of the owner,' because that is included in the word 'wrongful.'" *Rosc. Cr. Ev.* 567, 568. The definition approved by Chief Justice Green is that "Every wrongful taking without any color of right, with intent to deprive the owner wholly of his property, is larceny, whatever other motive may also have influenced the taker." *State* v. *South,* 4 *Dutcher* 28, 30. This definition need not be qualified to exclude a taking by mistake, for that is implied by the words "with intent to deprive the owner of his property." Possession taken or obtained fraudulently, with the intent to deprive the owner wholly of his property, sufficiently evinces a criminal intent to support a conviction for larceny. *State* v. *Davis,* 9 *Vroom* 176. And one who fraudulently obtains possession of the property of another, with intent at the time he receives it to convert it to his own use, the owner intending to part with his possession merely and not with his title, is guilty of larceny. *Commonwealth* v. *Barry,* 124 *Mass.* 325. Especially so where the owner parts with the possession temporarily for a special purpose, without intending to pass the title, or upon a condition upon the performance of which it was intended that title should pass. In East's Pleas of the Crown it is laid down "that the inquiry is whether the owner, in making the delivery, intended to part with the *property,* or only with the *possession.* For if he parted with the *property,* by whatever fraudulent means he was induced to give the credit, it cannot be felony. But if the bare *possession* only were delivered, then it is material to inquire whether the delivery were by way of charge, or as a general bailment, or for some special purpose." 2 *East P. C.* 668, § 102. And again: "It frequently happens in these cases that the prisoner makes off with the goods before any sale is actually concluded, or where there has only been a delivery upon a condition, by way of a pledge or the like, to have the goods

returned again. In these cases, the property not being parted with by the owner, if the prisoner obtained the possession by fraud, with intent to steal the goods, it amounts to felony." 2 *East P. C.* 674, § 105. Thus, where a customer went into a shop and asked to buy an article of clothing, and was referred by the clerk to a shopkeeper who refused to let him have it except upon his father's order, and he afterwards, without having obtained such order, and in the absence of the shopkeeper, asked to see the chattel, and it was shown to him by the clerk, and he took it from the counter, told the clerk that he had made it all right with the shopkeeper, and carried it away, it was held that, on these facts, he was properly convicted of larceny. *Commonwealth* v. *Wilde*, 5 *Gray* 83. In *The People* v. *Call*, 1 *Denio* 120, the owner of a promissory note, having received a payment from the defendant, who was the maker, handed the note to him to endorse the payment. The defendant took the note into an adjoining room, apparently to make the endorsement, and kept it and refused to deliver it up. It was held that the possession remained in the owner, that the defendant acquired only a temporary charge or custody of it for the special purpose, and that the subsequent conversion was larceny. A guest at an inn, to whom a piece of plate is delivered for use, may be convicted of larceny if he fraudulently converts it to his own use. 1 *Hale* 506 ; 1 *Hawk.* 33, § 6.

The case on which the state relies was briefly as follows : The defendant in December, 1890, bought at the store of Stern Brothers, in New York city, a quantity of jewelry, the goods set out in the indictment, the price of which was $21.75. The jewelry was to be delivered by Stern Brothers to the defendant at her residence in East Orange, to be paid for on delivery. The goods were put in a box, which was wrapped in paper and tied, and directed to Mrs. J. B. Gardiner, East Orange, the defendant's mother. The messenger of Stern Brothers who delivered the box rang the door bell ; a servant came to the door. He gave the box to her, saying there was $21.75 to be paid, producing a C. O. D. bill for that sum. The de-

fendant met the servant in the hall and took the box from her, and carried it into her room and opened it. The messenger testified that in a short time the defendant came downstairs, with the open box in her hand, and said there was no jewelry in the box; that a mistake had been made; that there was nothing in the box except a piece of lace trimming, which she exhibited. The sole issue of fact at the trial was whether the goods in question were in the box when it came to the defendant's hands. The goods, if they were in the box, were kept by the defendant. The bill has never been paid, the defendant contending that she never received the goods.

The goods were delivered into the defendant's custody merely for inspection and examination, to ascertain whether they corresponded with the bill. There was no intention on the part of the messenger or his employers to pass the title to the property until the price was paid. The delivery of the goods into the custody of the defendant for the special purpose did not pass the title. By such a delivery the defendant acquired no title to the goods, nor had she any reason to believe that she could rightfully retain possession without payment of the bill. If the goods were in fact in the box, the defendant wrongfully converted them to her own use without any color of title, with the manifest intent to deprive the owners of their property, and, it may be added, this was done *causa lucri.*

The instruction of the court to the jury on this head was in these words: " The charge in this case is that the defendant received from the agent of Stern Brothers, or from Stern Brothers themselves, the goods described in this indictment, and that, by a trick or a device, she removed the goods from the package in which they were delivered to her, and substituted other goods, and that this removal of the goods and the substitution of others was made for the purpose of converting the goods to her own use and depriving the Stern Brothers of their property. Now, I have no hesitation in saying that if, by a trick or device of this sort, the defendant intended to deprive those owners of their property in the goods, she would

be guilty of the crime that is charged in this indictment—that is to say, larceny."

This instruction as applied to the facts of this case was correct. There was no necessity to interject into it the words ". with a felonious intent," a phrase excluded from our criminal code, unintelligible to jurors, and calculated only to mislead. A plain statement of the facts and circumstances of a taking which in law would sustain a charge of larceny is of vastly more value to aid a jury in coming to a correct conclusion upon the evidence than a definition in technical terms which is practically unintelligible to the jurors.

The refusal of the court to comply with requests to charge a series of propositions as to the force and effect of circumstantial evidence was also excepted to. The case lay within a very limited range, and practically depended on the single question, whether the goods set out in the indictment were in fact in the box when it came to the defendant's hands, and the testimony *pro* and *con.* on that subject was direct, and there was no occasion to descant upon the nature of circumstantial evidence. Indeed, the discussion by the court in its charge to the jury of abstract legal principles unnecessarily is not to be commended. Such discussions tend to confuse and embarrass rather than enlighten and aid a jury.

On the subject of reasonable doubt the defendant's counsel requested the court to charge several propositions, of which two only need be considered. They are: (1) " That the facts and circumstances which you believe to be established by the evidence, whether direct or circumstantial, must not only be consistent with the hypothesis of defendant's guilt, but they must be such as to exclude any other reasonable hypothesis, and to produce moral certainty of guilt;" and (2) " that reasonable doubt is that state of the case which, after the consideration of all the evidence, leaves your minds in that condition that you cannot say you feel an abiding conviction to a moral certainty of the truth of the charge made against the accused."

The court's refusal to charge otherwise than as already charged was excepted to.

In an article in the Criminal Law Magazine, " On the Doctrine of Reasonable Doubt," Mr. Seymour D. Thompson uses this language: " Judges and text writers have frequently observed upon the futility of attempting by definitions to make this expression (reasonable doubt) clearer to the minds of jurors. * * * All definitions are little more than meta-physical paraphrases of an expression invented by the common law judges for the very reason that it was capable of being understood and applied by plain men in the jury-box. The danger of attempting these definitions and explanations is that they are liable to impress jurors with the idea that their verdict is not to be the result of the natural impression which the evidence has made upon their minds, but of some artificial rule which the law has created for them to apply in reaching it." 11 *Crim. Law Mag.* (1889), *p.* 4, § 3. In the pages of the article referred to the writer collects numerous decisions in courts of this country which he characterizes as a " realm in which doctrines, distinctions and subleties seem to contend forever and hopelessly with each other," and concludes his citations with the observation that " the nice and attenuated disquisitions with which we have been dealing are not to be met with at all in the modern English reports, and it is believed that they are foreign to the conceptions of the trained lawyers who sit as judges in the law courts at Westminster." *Id., p.* 46, § 41.

The charge of the learned judge on this subject was as follows: " The defendant is entitled to the benefit of a reasonable doubt. That is to say, before the jury convict her, they must be satisfied from the evidence that she has committed this crime. Every person charged with an offence stands before the community and stands before the jury presumed to be innocent. The fact that a complaint has been made, or that an indictment has been found, is no reason why the jury should find the defendant guilty. That only brings the parties before the court, and enables the state, if it can, to make out a case which will satisfy the jury that that crime has been committed by this person who is charged with it. The duty is on the

state to prove to the satisfaction of. the jury, beyond a reasonable doubt, that the defendant has committed the specific crime with which she is charged in the indictment. If they fail to do so, the defendant is entitled to an acquittal. If the jury, on a consideration of all the evidence, are satisfied that the defendant committed the crime with which she is charged in this case, why then, of course, it will be the duty of the jury to find her guilty.  *  *  *  You, gentlemen, are to decide this case simply upon the evidence which has been produced here, and in the consideration of that evidence, give the defendant the benefit of every reasonable doubt that arises in your minds as to her commission of this, crime, and say on your oaths, from the evidence, whether she is guilty or not."

No objection was made to the charge as delivered. The exception was to the refusal of the judge to charge the propositions submitted. One of these propositions was taken from the charge of Chief Justice Shaw in Webster's case, which was quoted with approbation by Judge Ogden in Donnelly's case, but was not adopted by the court. The charge of Judge Vredenburgh, sustained by the court, was that quoted in 2 *Dutcher* 509 ; and, as I understand it, the principle adopted by the court was that expressed by Chief Justice Green, that a charge that "instructs the jury in substance and in terms sufficiently intelligible, that if upon a careful review of all the evidence, they have in their minds a doubt of the prisoner's guilt, they should adquit," is all that the law permits. *Donnelly* v. *State*, 2 *Dutcher* 509. The charge of the judge fully complied with this principle ; and it may be observed that, in *Cliver* v. *State*, 16 *Vroom* 46, a charge less explicit was sustained by this court.

One other subject may properly be alluded to. The defendant's counsel asked the court to exclude Mr. Kalisch from appearing to aid the prosecutor of the pleas in the trial, on the ground that he had been retained by Stern Brothers to assist the prosecution. Mr. Kalisch is a counselor at law of this state, and appeared by the consent of the prosecutor of the pleas. The judge ruled that it was not material whether he

·was paid by Stern Brothers or not; that if the prosecutor of the pleas consented that he should be present and assist in the trial, he knew of no right on the part of the court to prevent his doing so. This ruling was excepted to. No error has been assigned upon the exception, and it was not adverted to on the argument. But to prevent any misapprehension on the subject, the court takes occasion to say that the ruling of the judge was in accordance with the settled practice in this state, and is in all respects correct.

We find no error on the record, and the judgment of conviction should be affirmed.