THE STATE OF NEW JERSEY v. GEORGE BIEHL AND RICHARD C. ANZER ET AL., DEFENDANTS.

Submitted January 21, 1947—Decided March 4. 1947.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the state, *Horace K. Roberson, Mark Townsend* and *William P. Gannon.*

For the defendants, *Alexander Simpson.*

The opinion of the court was delivered by

BODINE, J. This case comes before us on a rule to show cause why a writ of *certiorari* should not issue to remove six indictments handed down in the Hudson Oyer and Terminer,

to the end that a motion may be made to quash the indictments. The rule refers to the indictments as pending before the Quarter Sessions Court. We have determined not to dismiss for this defect. We could, of course, have so done. *State* v. *Lamb*, 81 *N. J. L.* 234.

The indictments upon their face charge a crime. The real attack is upon *R. S.* 2:87–1, providing for the appointment by the Governor with the advice and consent of the Senate, of commissioners of juries. There can be no question in this state of the power of the legislature to provide, in any manner it sees fit, for the appointment of jury commissioners. Under the constitution, the power of appointment of state officers has been widely distributed among all the departments of the government, and where the constitution is silent as to who shall make the appointment the legislature is free to provide as they will. See *Ross* v. *Freeholders of Essex*, 69 *N. J. L.* 291; *Hudspeth* v. *Swayze*, 85 *Id.* 592. Nor are we concerned with any invalidity in the appointment of jury commissioner Dougherty. Any attack upon a jury commissioner's appointment in this case is a collateral attack. If the appointment is questioned it should be by a direct proceeding addressed to the officer and not in a proceeding which seeks to question an indictment found by a grand jury. *State* v. *Zeller*, 83 *N. J. L.* 666; *Erwin* v. *Jersey City*, 60 *Id.* 141; *State* v. *McDevitt*, 84 *Id.* 11; *affirmed*, 85 *Id.* 731.

In *State* v. *Toth*, 86 *N. J. L.* 247, Mr. Justice Trenchard, for the Court of Errors and Appeals, said: "The legality of a grand jury does not depend at all upon the validity or invalidity of the title of the officer by whom such body is selected or drawn. If the title of such officer is colorable, indictments found by a grand jury selected or drawn by him are as impregnable against attack as if its members had been selected or drawn by an officer whose title was unimpeachable."

We are not impressed with the charge that improper persons participated in the grand jury deliberation. The Attorney-General and his deputies could certainly, when requested, participate in the deliberations of the grand jury. There can be no collateral attack upon their appointment in this proceeding. See *State* v. *Ellenstein*, 121 *N. J. L.* 304.

It is argued that the grand jury was improperly selected without regard to proper representations in the county as to geographical and political lines. We find nothing in the record that substantiates the charge.

An argument is presented with respect to the jury list from which the grand jurors were chosen. It is claimed that an undue number of names were placed on the list from certain wards in the City of Jersey City and that names from certain other wards did not appear. It does not seem to us that the court can substitute a formula of its own for the manner in which the jury commissioners make up the list from which the names of the grand jurors are to be chosen. Whatever method is chosen by the commissioners must rest in their discretion, in the absence of proof that they were actuated by a bad motive.

The rule in this state was expressed by Mr. Justice Trenchard for the Court of Errors and Appeals in *State* v. *Simmons*, 120 *N. J. L.* 85. He said: "We therefore think there was no irregularity in the present case, but, even if there was, the general rule is that statutory provisions respecting the preparation of lists and the drawing of the panel are regarded as directory only, and that irregularities therein are no ground of challenge, unless they are such as plainly operated to prejudice the challenging party. *State* v. *Gardner*, 55 *N. J. L.* 17; 26 *All. Rep.* 30; *State* v. *Calabrese*, 107 *N. J. L.* 115; 151 *Atl. Rep.* 781; *Thomp. Tr.*, § 33; *Thomp. & Merr. Juries*, §§ 134, 139."

The grand jury impanelled has broad powers and unless something is shown to indicate more than appears in this case a writ would result in a definite miscarriage of justice.

In *State* v. *Daylon*, 23 *N. J. L.* 49, Mr. Chief Justice Green said: "The constitution provides that no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury; but it neither provides the mode of presentment, nor the evidence upon which it shall rest. Nor can it with propriety be said to be a right of the defendant to be informed of the evidence upon which the grand jury acted, or to avail himself of its legal incompetency."

The court should sparingly inquire concerning the formalities relating to the finding of an indictment by the grand jury. The defendants will find themselves amply able to defend themselves if the charges in the indictment cannot be maintained. The due administration of justice requires that, except in most flagrant instances, this court should not interfere by its writ with the prosecution of crime charged by a grand jury.

All matters argued have been carefully considered but do not require a further discussion.

The rule will be dismissed, with costs.