THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES LYNCH, PLAINTIFF IN ERROR.

Argued September 9, 1926—Decided October 19, 1926.

1. A motion for a trial before a foreign jury is addressed to the discretion of the court, and its refusal constitutes no ground for error unless there was an abuse of this discretionary power.

2. Neither the fact that three members of a special panel of jurors, selected for the trial of a defendant on a criminal charge, were wrongly named, nor the fact that certain challenges of jurors were improperly overruled, will justify the reversal of a conviction had upon that charge, when the case is brought up for review under the one hundred and thirty-sixth section of our Criminal Procedure act, if it appears that neither the one nor the other of these facts prejudiced the defendant in maintaining his defense upon the merits.

3. Where it was open to the jury to find, on the proof submitted, that the defendant, before he shot B., had made up his mind to perpetrate a robbery, if the money could not be obtained otherwise, and that he killed B. in order to prevent any interference by him in the carrying out of this scheme, the jury were justified in fixing the crime as murder in the first degree.

———

On error to the Bergen Oyer and Terminer.

For the plaintiff in error, *John B. Zabriskie.*

For the state, *Archibald C. Hart,* prosecutor of the pleas, and *John J. Breslin, Jr.,* assistant prosecutor.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was indicted by the grand jury of Bergen county for the murder of one Frank Brannon, committed in an attempt to rob the American Railway Express Company, Brannon being an employe of that corporation. The trial resulted in a conviction.

Briefly, the important facts contained in the evidence submitted on the part of the state are as follows: A man named Palmer was employed by the express company at its Hackensack office as cashier. The superintendent of that office was one Talmadge. The only other employe located in this office at the time of the alleged murder, besides the superintendent and Palmer, was Brannon, the man who was killed. It appeared that Palmer had embezzled moneys of the express company, and that, in order to cover up his defalcations, he had entered into a scheme with certain parties, named Cuneo,

Corcoran, Strand and Lynch, to undertake a pretended hold-up, which would, apparently, justify him in surrendering the moneys of the company then in his charge to the parties engaged in it. It further appeared that he was to advise them when there would be enough money left at the company's office to make this scheme worth while to them, and the day fixed was the 21st of January, 1926. On that day Cuneo, Corcoran, Strand and Lynch drove from the ferry at the town of Edgewater to Hackensack, and when they reached the express company's office Strand and Lynch got out, leaving the other two in charge of the two automobiles in which the party had come. The company's office was divided into two rooms, one used for the receipt and delivery of freight and the other as the business and financial department. Strand went through the door opening into this latter room, and stated to the superintendent, who was there, that he had come to arrange about expressing a trunk. In the meantime Lynch entered the door leading into the freight room. He found Brannon there, and no one else. According to the evidence on the part of the state, for some reason or other, he shot Brannon down, and then came through the door separating the two rooms with a pistol in his hand, held up Talmadge and Palmer, threatened to shoot them if they interfered, took the moneys, which Palmer had already prepared for the hold-up party, and he and Strand then backed out of the door to this part of the office, got into their cars and were driven away.

Lynch's defense was that this whole scheme was a fake, so far as the hold-up feature was concerned; that the members of his party were only to go through the motions of a hold-up, without any intention of taking the money of the express company unless they were able to get it peacefully from Palmer. He also denied that he had shot Brannon.

On the proofs submitted, the state's contention was that whatever might have been the original scheme, Lynch, when he found Brannon in the freight room, made up his mind that he would take the money at all hazards, whether he was interfered with or not, and that, in order to accomplish this

purpose, he shot down Brannon, and then went into the other room and took the money from the place where it had been placed by Palmer. The jury, under the charge of the court, found that Lynch had been guilty of the homicide; that it had been committed in the perpetration of a robbery, and that, therefore, the degree of his guilt was murder of the first degree.

The first ground upon which the plaintiff in error seeks a reversal of the conviction before us is based on the allegation that the trial court committed harmful error in refusing to grant his application to be tried before a foreign jury. This application, we think, was properly refused. It was addressed to the discretion of the court, and its refusal constitutes no ground for reversing the conviction unless there was an abuse of this discretionary power. The motion was based upon the assertion of counsel that, owing to the notoriety of the case, an impartial jury could not be obtained from among the citizens of Bergen county, qualified to serve as jurors, but this statement was not justified by any proofs submitted in support of the motion, and, for this reason, was properly denied. We may add that it is at least doubtful whether the Court of Oyer and Terminer has jurisdiction to entertain such a motion. Section 78 of our Criminal Procedure act (*Comp. Stat., p.* 1845), apparently, vests that function solely in the Supreme Court. We, however, prefer not to base our conclusion as to the merits of the point under discussion upon the jurisdictional question, as it was not mooted in the trial court.

It is next urged as a ground for reversal that the trial court wrongly refused the defendant's application for an adjournment of the trial. This application was based upon the statement that counsel appointed by the court to defend the plaintiff in error was only assigned four days before the trial, and that this was not long enough to enable him to properly prepare a defense. We think the refusal to grant the adjournment was justified. It appears, without contradiction, that Lynch, the plaintiff in error, knew nearly a month before the day set for trial that he had been indicted for

the murder of Brannon, and that the trial of the cause had been set for the 23d day of February; this being the day on which it was moved. He was arrested in New York shortly after the murder was committed, and resisted extradition by a *habeas corpus* proceeding. This was decided against him, and he was then brought to New Jersey. He had all that time (nearly a month) in which to employ counsel, if he had desired to do so. He did not see fit to do this, and, in order that he might have his rights protected at the trial, the court appointed counsel to defend him. The sole ground upon which the motion to postpone was rested was that counsel who had been assigned by the court had not had sufficient time in which to properly prepare a defense. There was no suggestion then made to the trial court that there were witnesses in existence who, if called on behalf of the defendant, would give evidence supporting his plea of not guilty; and, of course, there was no suggestion that the postponement was necessary in order to procure the presence of any such witnesses. Nor is it now claimed before us that the defendant was harmed as a result of the refusal of the motion to postpone because of the fact that, if it had been granted, he would have been able to produce such witnesses upon the adjourned day. As to the contention that counsel assigned by the court had not had time to properly prepare a defense, an examination of the record of the trial sent up with the return to the writ satisfies us that, even if a postponement had been granted, counsel could not more admirably have defended his client than he did at the trial now under review. We conclude, therefore, that the conviction under review ought not to be reversed because of the refusal of the trial court to grant a postponement.

It is next argued that this conviction should be set aside because the trial court improperly overruled certain challenges for cause interposed against members of the special panel drawn in pursuance of section 82 of the Criminal Procedure act; the basis of these challenges being that, according to the testimony of these members, they would be influenced as jurors, to some extent, at least, in determining

the guilt or innocence of the defendant, by newspaper reports of the occurrence which they had severally read. The challenges for cause having been overruled, each one of these members was peremptorily challenged by the defendant.

It is further contended that the court committed injurious error in refusing to direct a mistrial because of the fact that three of the jurors on the special panel, and who were drawn for service, were misnamed, thus depleting the special panel by that number. Two of these misnamed jurors were excused by the court and the third was peremptorily challenged by the state.

We consider that neither of these last mentioned grounds for reversal is meritorious. The defendant elected to bring his case before us under the one hundred and thirty-sixth section of our Criminal Procedure act (*Comp. Stat., p.* 1863), which entitles him to a much broader review of the proceedings had at the trial than he would have been entitled to under a strict writ of error. The last clause of that section provides that "no judgment given upon any indictment shall be reversed for any * * * error except such as shall or may have prejudiced the defendant in maintaining his defense upon the merits." It appears in the record sent up with the writ that eleven of the jurors who sat in the case were drawn from the special panel before it was exhausted. Nine of them were drawn before the defendant had used up his peremptory challenges. The tenth and eleventh jurors were declared to be satisfactory to the defendant. The twelfth juror was drawn from the general panel, pursuant to the terms of section 83 of the Criminal Procedure act (*Comp. Stat., p.* 1847), which provides that "when the special panel or list of jurors served on a defendant * * * shall be exhausted from any cause before a jury for the trial of the indictment shall be obtained, talesmen shall be taken from the general panel of jurors returned for the term at which the defendant is to be tried." After this latter juror had been drawn he was examined by defendant's counsel as to his qualifications, and he was then declared by him to be satisfactory to the defendant. The right of the defendant, so far as the empanelling of the jury

was concerned, was to have twelve impartial members of that body selected, and that right was accorded to him. In this situation it cannot be successfully contended that "he was prejudiced in maintaining his defense upon the merits," either by the fact that three members of the special panel were wrongly named, or by the fact that certain challenges for cause, as he contends, were improperly overruled.

It is further argued as a ground for reversal that the trial court prejudiced the defendant by rebuking two of the jurors, each of whom stated on his preliminary examination that he was convinced that the defendant was guilty, and that he could not disabuse his mind of that fact unless the evidence showed to the contrary. The propriety of this judicial action seems to us to be beyond question; that its effect was to prejudice the defendant on his trial we are unable to perceive.

We are urged to reverse this conviction on the further ground that the evidence did not warrant a conviction of a higher crime than murder of the second degree, for the reason that the killing of Brannon was not done in the perpetration of a robbery. We think this contention is without merit. It was open to the jury to find, on the proofs submitted, that Lynch, before he shot Brannon, had made up his mind to perpetrate a robbery, if the money could not be obtained otherwise, and that he killed Brannon in order to prevent any interference by him in the carrying out of this scheme. They evidently concluded that this was the case, and, having so found, they were justified in fixing his crime as murder of the first degree.

Other grounds for reversal deal with certain excerpts from the charge of the court to the jury, the contention being that they contained errors in law. Our examination of the charge, however, leads us to the conclusion that there is no legal error contained in it and that there are no misstatements of fact therein, as has been suggested by counsel for the plaintiff in error.

Lastly, it is argued that the verdict is contrary to the weight of the evidence in the cause. Our careful examina-

tion of the proofs leads us to the conclusion that this contention is without merit.

On the whole case, we reach the conclusion that the conviction under review should be affirmed.

WALKER, CHANCELLOR (dissenting). The defendant was indicted for murder by the grand jury of Bergen county, and was arraigned on February 18th, 1926. He pleaded not guilty and was remanded for trial on Tuesday, February 23d, five days afterward. He was alone, without counsel. On the following day, four days before the trial, John B. Zabriskie, Esq., was appointed by Judge Seufert, one of the judges of the Bergen Oyer and Terminer, to represent the defendant in the cause. This appointment was made by order, in writing (which has been lost), and was not made in open court or in the presence of the defendant.

The second assignment of error is, because the court refused the defendant's application for adjournment notwithstanding the assignment of counsel had taken place only four days before trial, including Saturday, Sunday and a legal holiday (Washington's birthday). On the trial counsel for the defendant said:

"If your honors please, I am going to ask for an adjournment of this case. As your honors know, the arraignment only occurred a very short time ago, and my assignment to the case occurred on Friday—occurred Friday at about noon, if I remember correctly; in fact, it was just before noon, and, unfortunately, I had made some appointments for that day which I could not postpone; so, instead of sitting right down to work, as I otherwise would have, I really used a good part of Friday afternoon on other matters. On Saturday I did everything I could, and Sunday and yesterday, even, I did not take any holiday, and I did not really observe the Sabbath, but I did all that I could, and I tried to get certain people here, and especially the lawyer in New York, who I thought would be familiar with the case from his connection there. But his office advised me—in fact, I got hold of him before he went away, but he said he had appointments in

Albany of such a nature that he could not get here until to-day; he has not arrived yet, so far as I know, and so I have had absolutely no information, co-operation or assistance from that source. The wife has not been able to get here. She was supposed to get here this morning and she has not yet arrived, and so I have had no chance to get the information." Counsel then said he had not seen the defendant's wife. The prosecutor said she was then in court, outside. As a fact, she did not appear until the second day of the trial. The court remarked that counsel could have seen the New York attorney by going to Albany, where he was, and asked him if he went, to which he replied no; he felt that if he went away he would lose too much time; that he stayed home trying to get everything circulating there.

The court said that it would seem, of course, that when a prisoner was arraigned on Thursday evening, and is told to get ready for a trial on the charge of murder the following Tuesday, that the court was in a little of a hurry, and, ordinarily, the court does not do that sort of thing; that the situation in this case differed from other cases; and, according to the state's claim, as he understood it, Lynch, after the homicide, went immediately to New York; he had to be discovered, located, arrested and extradited; he resisted extradition, and was there a very few days after the homicide several weeks before; that after the date had been fixed for all the group of cases (same robbery) that there was resistence to coming over to New Jersey, a *habeas corpus,* and the usual dilatory and defensive motions in order to prevent defendant's being brought over, as he gathered from statements of the prosecutor, and adjournment asked for and resisted by the officials of New Jersey; that it was stated in open court that the trial was set for the 23d of February; that all arrangements were being made and that there would be objection to any delay because there had been delay in New York; that defendant had counsel in New York, he was responsible for delays which then turned out to have been unnecessary because the defendant might just as well have come over in the first place; if he had counsel in New York

he could and should have had counsel in New Jersey; the judge said he was unable to understand why, if defendant or his friends could pay counsel in New York, they could not pay counsel in New Jersey; so that in view of all the situation he was fully apprised of the fact that his trial was coming on, and by his own action had prevented his assigned counsel in New Jersey from getting the grasp of the case that he should have had, and the trial should go on. An exception to this ruling was prayed for and allowed.

In answer to this, counsel for the state says that the motion is addressed to the discretion of the court; that on extradition proceedings this state openly declared that the case had been fixed for trial on February 23d, and that the defendant must be prepared for that day.

This is all irregular, and the defendant did not have to regard anything that the prosecutor may have said on the *habeas corpus* hearing in New York, about the course the state intended to pursue here. The defendant was not in the State of New Jersey nor within the jurisdiction of its courts, and the proceedings against him could not have commenced until he was brought within our jurisdiction and arraigned in court charged with crime against our laws. He had an absolute right to rely upon that.

Counsel for the state cites the case of *Commonwealth* v. *Bezek*, 168 *Pa. St.* 603. In that case defendant was convicted of murder in the first degree, and on error contended that the judgment should be reversed because a motion for a continuance of the case by counsel assigned for the defense was overruled. Counsel was assigned by the court on Friday noon; the case was called for trial on Monday following; defendant did not understand the English language and no interpreter could be procured, and, therefore, counsel was compelled to go to trial without an opportunity to prepare the case.

In the opinion it is stated that counsel for the defendant conceded that there was nothing in the record on which to base this alleged error, which was technical and a sufficient answer to it. Nevertheless, *in favorem vitæ*, they considered

it in the light afforded by statements of counsel and remarked that nothing short of an abuse of discretion by the trial court would justify intervention, and it did not appear that discretion was abused. And the court remarked that nothing was shown in support of the motion which presented reasonable ground for believing that a postponement of the trial would result in strengthening the defense in any respect. There is nothing more in the report on this question than is here presented, and that, it will be observed, is very meagre.

It may be that nothing appeared upon the trial which indicated that if more time had been given the defense could have been strengthened. But I think that that is not the test, and that the case, which need be given no more weight here than we choose to accord it, should not be followed. The test, in my opinion, is whether reputable counsel, either such retained by the defendant or appointed by the court (which employment or assignment implies confidence in him), informs the court that the time elapsing between the arraignment, or appointment, and trial, *if that time be extremely short* (a few days), as in this case, does not afford him reasonable opportunity to fully, fairly and *bona fide* prepare the defense of a man charged with murder and to be put on trial for his life, the court should grant a continuance for a reasonable time to afford him that opportunity; and if such request is denied, reversal should result.

In this case counsel was not before the court at the time of arraignment, plea and setting the case down for trial, but was assigned afterwards, without any consultation as to the time of trial, and he had no opportunity to be heard on that question and could not make his objection until the case was peremptorily moved. Moreover, defendant not being acquainted with the counsel assigned, refused to talk with him, fearing he was a spy sent to entrap him. Nor can he be blamed for this. If the counsel had been present on the arraignment and been then and there appointed and had stepped over to defendant and consulted with, and advised, him, all would have been different. Counsel asserts that by reason of this difficulty he was unable to subpœna witnesses.

In the case of *State* v. *Becker,* 210 *N. Y.* 274, the defendant had been convicted of murder in the first degree, which was reversed and a new trial ordered. The Court of Appeals, Hiscock, J., writing the majority opinion (six to one), said (at *p.* 289) that the defendant was entitled to have his counsel and case treated with that consideration which they justly merited; that not only questions of law should be properly decided, but that questions resting more or less in discretion should be reasonably disposed of; that, however unintentional, no spirit of hostility or of discrimination on the part of the court should seem to be generated which would envelop his case and permeate the minds of the jury as they listened to the evidence or arguments, and they finally came to decide the momentous question of guilt or innocence; that the court did not think the defendant had such a trial, but thought he suffered grievously from the erroneous disposition both of questions of law and discretion.

It is true that in this case the questions of discretion arose largely on the subject of the length of the cross-examination of witnesses, the time when cross-examination was permitted, and the demand for production of papers, &c., so that defendant's counsel could frame cross-questions; but the court held that so far as the rulings were of a kind classed as discretionary they did not comply with the true rule of discretion as to the conduct of a trial by the presiding judge, which rests for its foundation upon the conception of a judgment exercised at every stage with open mind, fairly and impartially and in the interest of exact justice between the people and the accused; that the fundamental demand of our (New York) law is that the accused shall have a fair trial, and if that right has been infringed, not in respect to mere technicalities, he should have another opportunity to meet his accuser and establish his innocence; that the defendant suffered from the erroneous disposition of questions both of law and discretion, and that these errors in the aggregate are so substantial and serious that they ought not to be disregarded.

Now, here we are dealing with a single discretionary question, that is, the time which fairly and reasonably ought to

be allowed a prisoner to prepare for a trial in which his life and death are involved. While in the Becker case the question was concerning a series of discretionary matters occurring during the trial, and their aggregation was so substantially injurious as to compel a new trial; here, the error alleged is one *in limine,* going to the very vitals of the whole case, and is one which could not be cured by anything occurring on the trial (for which defendant was given no reasonable time to prepare), short of his retracting his plea, by leave of the court and pleading "guilty."

There was a time in England when a man would be accused, indicted, tried, convicted and executed within a week. It was to remedy just such oppression of defendants that our constitution and law have provided so many safeguards for the protection of men accused of crime.

Our constitution provides (*art.* 1, § 8) :

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have complusory process for obtaining witnesses in his favor, and to have the assistance of counsel in his defense."

This meets the other side of the question, namely, cases in which men were imprisoned, notably in England, and left to languish in jail for an inordinate length of time without being brought to trial, if ever. The provision for a speedy trial is given for the benefit of the accused, not for his oppression. Our Criminal Procedure act provides that every indictment shall be tried at the term issue is joined, or the term after, unless the court for just cause shall allow further time. *Comp. Stat., p.* 1837, § 53.

It is not an answer to defendant's request in this case to say that the testimony proved his guilt. He must be tried as well as convicted according to law. He must have an opportunity to make defense, not a mere opportunity to attend his own trial. Ordinarily, when a prisoner is arraigned, especially for a serious crime, such as murder, his counsel, either retained or assigned, is present on the arraignment,

and the trial day is fixed with some reference to the time he requests for preparation, if reasonable; at least, on such an occasion he has an opportunity to be heard in that regard; but, I repeat, here the defendant, arraigned on the indictment for murder on Thursday evening, was without counsel and the case peremptorily set down for trial on the following Tuesday, four days only intervening between arraignment and day of trial, two and a half of them being *dies non,* and his counsel's protest was timely, in fact, was made at the first opportunity, namely, when the case was peremptorily moved. No matter what the trial showed, counsel urged on the hearing of this appeal the point assigned for error, namely, that he had not a reasonable time to prepare, and that, it seems to me, is obvious. It may well be that on another trial the defendant would be convicted of murder in the first degree just as Becker was on his second trial. Such a result might show the wisdom of the verdict rendered in this case, but not the method by which that result was attained. To sanction this proceeding is, in my opinion, equivalent to a declaration that this conviction of murder in the first degree justifies the means whereby it was secured, which denied defendant the right to have a reasonable time to prepare to make a *bona fide* contention that the contrary result should have been reached and his life spared.

Some of the things which defendant suffered by this ruling are the following: His counsel made application for a foreign jury. It was overruled. Foreign juries in criminal cases are provided for in the Criminal Procedure act. *Comp. Stat., p.* 1845, § 78. It gives the Supreme Court discretion to order foreign juries in criminal cases which may have been commenced in that court or removed to it from any other court, whenever in their opinion a fair and impartial trial cannot be had before a jury of the proper county. A motion for a foreign jury may be made in behalf of the state or of any defendant. There is no provision for the ordering of a foreign jury by the Court of Oyer and Terminer. In the pending case of State *v.* Stevens et al., on indictment for murder against defendants in the Somerset Oyer and Terminer, motion was recently made in the Supreme Court

by counsel for the state for a foreign jury. Counsel for defendant first objected that the Supreme Court was without jurisdiction to hear the motion because the cause had not been first removed by writ of *certiorari* to the Supreme Court, which was essential to give that court jurisdiction to deal with the matter, but subsequently waived the objection and consented that that court should hear and determine the application, which was done.

Now, it may well be that the Court of Oyer and Terminer has no jurisdiction to order a foreign jury, and it may also well be that the defendant in the instant case was entitled to a foreign jury. If so, he could only have secured that boon by removing the cause into the Supreme Court on *certiorari* and applying there on notice for a foreign jury. This he did not have time to do. Nor did defendant's counsel have time to consult with counsel who represented him on the *habeas corpus* proceedings in New York. Another thing: The judge remarked that he supposed that counsel for the defendant had plenty of opportunity, at least should have had opportunity, to see defendant's New York lawyer, even at Albany, and asked if he went there. Defendant's counsel, as already stated, said he did not go because he felt he would lose too much time and did not want to be put to criticism later on. Obviously, it would take half a day to go from Hackensack to Albany, and half a day to return, and another half day or more to interview the lawyer. All of which would reasonably have occupied two out of the four days allowed for preparation for defense. Then, too, some little regard should be given to the situation and appointments of counsel assigned. He may have been in a most embarrassing position in reference to several important matters, which, if a few days more had been allotted for preparation for the defense, he might have attended to. Of course, the murder case was paramount, and, presumably, he gave practically his undivided time and attention to that, but must have been put to it in order to postpone and arrange his other business. He says that certain appointments which he had made for Friday afternoon he could not postpone, so, instead of sitting right down to work, as he otherwise would have done,

he used a good part of Friday afternoon on other matters. That left him Saturday, Sunday and Monday, out of which there was just one-half day, Saturday morning, which was not *dies non*. Saturday afternoon was a holiday, Sunday was a sacred day, and Monday was a holiday, Washington's birth-day. Of course, counsel could work during all of this time, but his trouble, undoubtedly, was to get in touch with persons in public offices and other places, to which he might have, and probably would have, resorted in the preparation of his case.

The court remarked that there were the usual dilatory and defensive motions by the defendant in order to prevent his being brought over here; that he might just as well have come here in the first place. Well, so he might; but, also, every man within the borders of an independent commonwealth has a right to make it his asylum, and to resist extradition to a demanding state. And courts, I take it, are bound to respect as well as to enforce rights. Of what value is the constitutional guarantee that a defendant shall have the assistance of counsel in his defense, if counsel is not afforded an opportunity to prepare that defense?

In the case of *Rex* v. *Wilkes,* 4 *Burr.* 2527, the defendant had been informed against for publishing a seditious and scandalous libel. There were two motions made, one by the attorney-general that the defendant might be committed, and one by his own counsel that he might be bailed. To bail the defendant (in the circumstances of the case) was a matter resting in the discretion of the court. The case contains the following (at *p.* 2539) :

"Lord Mansfield—God forbid that the defendant should not be allowed the benefit of every advantage he is entitled to by law.

\*       \*       \*       \*       \*       \*       \*

"But *discretion,* when applied to a court of justice, means *sound* discretion, *guided by law.* It must be governed by rule, not by humour. It must not be arbitrary, vague and fanciful, but legal and regular."

Now, to my mind, the action of the court in setting this case of last importance, involving human life, down for trial

five days after the arraignment of the defendant, who was without counsel, with two and a half of the remaining four days *dies non,* was arbitrary and oppressive of the defendant, and that the refusal of the trial judge, on application made at the earliest possible moment, when the case was moved peremptorily for trial, for a continuance to enable counsel for the defendant (assigned only three and a half days before, out of the presence of the defendant, who, not knowing the counsel, had refused to communicate confidentially with him), to prepare to make proper defense, was not the exercise of proper legal discretion but was arbitrary and oppressive to the defendant. In other words, was an abuse of discretion, which is cognizable in a reviewing court, and should, in this case, result in reversal. An abuse of discretion means no more than legal error.

The discretion of a trial court in respect to granting or refusing a motion for continuance is not an arbitrary, but a judicial, discretion, governed and controlled by legal rules, and to be exercised with a view to the manifest rights of the parties and the prevention of injustice and oppression. 13 *C. J.* 125.

In this case the defendant was given no more time to prepare and defend his life in a court of justice than the law gives to a defendant sued for $100 in a District Court, for the statute relating to District Courts provides that the summons shall be served at least five days before the time of appearance mentioned therein. *Comp. Stat., p. 1966,* § 45. And this gave the defendant only four days after arraignment before the day of trial, irrespective of the question whether they were all full working days for the defense.

In *Haines* v. *Roebuck,* 47 *N. J. L.* 227, the Supreme Court held that although granting or refusing an adjournment is in the discretion of the judge of the District Court, yet, a wrongful refusal of an adjournment, whereby a party has been prevented from procuring his witnesses and making defense on the merits, is an error remediable on appeal. And Mr. Justice Depue, writing the opinion, said (at *p.* 228) : "The power of adjournment granted by the thirtieth section of the

Justices' Court act, by which the practice and procedure of the District Courts in Newark are regulated, is expressed in language importing a discretionary power, and it has been held that the granting or refusal of an adjournment is in the discretion of the justice. *Doughty* v. *Jones,* 2 *Pen.* 654. And yet the wrongful refusal of an adjournment, whereby a party has been prevented from procuring his witnesses and making defense upon the merits, has been regarded as an error. The justice, having refused to act upon reasonable ground for an adjournment, is presumed to have acted upon a misapprehension of the law, and to have proceeded upon an erroneous principle. *Horner* v. *Hewlings,* 3 *Halst.* 227, 230; *Gould* v. *Brown,* 4 *Id.* 165, 166. Such an error in the proceedings of the District Court may be made the ground of appeal and reversal in the Court of Common Pleas."

Now, it seems to me that it is incongruous, to say the least, for the courts to hold that the refusal of a District Court to grant an adjournment whereby a party may be prevented from procuring witnesses and making defense on the merits in a more or less trivial case, is error remediable on appeal; and for this court to say that when a man is arraigned, charged with murder, that he may be put upon his defense five days afterwards, especially in such circumstances as are present in this case, which have been fully stated above and need not be here repeated.

This case is here under section 136 of the Criminal Procedure act (*Comp. Stat., p.* 1863), which provides that if it appears from the record that the plaintiff in error on the trial below suffered manifest wrong or injury in the denial of any matter by the court, which was a matter of discretion, the appellate court shall remedy such wrong or injury and give judgment accordingly and order a new trial, provided that no judgment shall be reversed except for error such as shall *or may* have prejudiced the defendant in maintaining his defense upon the merits. In my opinion, it cannot be successfully asserted that the defendant, in respect to the assignment of error going to the refusal of a continuance,

*may not* have been prejudiced in maintaining his defense upon the merits.

Of course, every criminal should be adequately punished for his crime, and those who perpetrate murder of the first degree should be punished with death; but this does not mean that they should be denied a full, fair and *bona fide* opportunity to make defense. The law presumes, and wisely, that every person charged with crime is innocent until his guilt be proven beyond a reasonable doubt. No matter how heinous the offense, the presumption still obtains. And it obtains even in the jury room, for it was said by the Supreme Court in *State* v. *Raymond,* 53 *N. J. L.* 260 (at *p.* 267), that in the various mental conditions, ranging from that in which the jury think the accused innocent, to that in which they are convinced beyond a reasonable doubt of his guilt, he is entitled to the benefit of their uncertainty.

The safeguards thrown about prisoners—and the law makes no distinction between murderers and chicken thieves in this respect—among which are that they shall have compulsory process for obtaining witnesses in their favor, and shall have the assistance of counsel in their defense, that they shall be presumed innocent until proven guilty (all but the presumption of innocence is denied them unless they are permitted reasonable time and opportunity to make defense), are embodied in constitutions and statutes, and in the immemorial practice of courts. They are the embodiment of the wisdom of the ages, evolved from judicial procedure covering centuries, and are deemed to be the wisest, safest and best regulation for the protection alike of the commonwealth and the accused.

My vote is to reverse, and I am authorized by Messrs. Justices Minturn and Kalisch, and Judges Kays and Mc-Glennon to say that they concur in this opinion.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, HETFIELD, JJ. 9.

*For reversal*—THE CHANCELLOR, MINTURN, KALISCH, MC-GLENNON, KAYS, JJ. 5.