STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CHARLES ZIED, ALIAS CHARLES RUBIN, PLAINTIFF IN ERROR.

Argued October 16, 1935—Decided February 4, 1936.

For the plaintiff in error, *John A. Penn.*

For the state, *Samuel P. Orlando,* prosecutor of the Pleas.

The opinion of the court was delivered by

PERSKIE, J. At or about two o'clock on the morning of September 2d, 1934, the plaintiff in error, *i. e.,* defendant below, and two other gangsters (all with criminal records) were perpetrating a robbery in a house of prostitution at 243 Sycamore street, Camden, New Jersey. At the point of guns or revolvers, or both, all those present were held up and made to turn over whatever moneys they had. At about the same time, William Feitz and Joseph Leonhardt, detectives of the police force of Camden, were patroling in what is called a police radio car the territory in which the house in question is located. For reasons not altogether clear but entirely immaterial here, Feitz concluded to go over to the house "to know what it was all about." Leonhardt remained in the car. While the robbery was in actual progress, Feitz rang the bell of the house to gain admittance. The proofs disclose, and it was open to the jury to find, if it so chose,

that one of the robbers said, "don't open it;" and that the defendant said, "open it, his money is as good as anybody else's." At all events Feitz entered the premises and as he did he said, "what's all this?" He apparently attempted to draw his revolver and, as he did, it was again open to the jury, on the proofs, to find, if it so chose—that defendant said, "let him have it." *And they did.* Four bullets entered Feitz's body and made eight bullet wounds; three bullets entered his back and two of these came out through his chest; one came out in the muscular tissue in front, between the chest and the left arm and the other entered the right arm about three inches above the wrist. Officer Leonhardt, on hearing the shooting, got out of the car and found Feitz on the ground near the car. He was taken to the hospital and died a few minutes after his admission. The *corpus delicti* and the fact that death was due to bullet wounds were admitted. The identification of the defendant was positive. Defendant denied his guilt. He testified that he had no knowledge of the occurrence; that he was elsewhere at the time. He admitted that he was in the house that night but insisted that he left before the shooting. This is what he said. in substance, in explanation of his admitted presence in Camden that night. Although he lived in Philadelphia, yet, he went to Camden to attend a motion picture theatre and later decided to visit the disorderly house in question. When asked why he did not go to a theatre in the vicinity of his home, he said that he had seen all the pictures that were being shown or exhibited there, and, therefore, journeyed to Camden to find a picture that he had not seen. He insisted that he was alone while in Camden and alone while he visited the house: that he remained in the house for only about ten or fifteen minutes because there were too many people there. A rather weak and unconvincing story. At all events, a jury question was presented. He was found guilty of murder in the first degree without recommendation.

The proofs were not only not contrary to the weight of the evidence but fully justify the inescapable conclusion of defendant's guilt beyond a reasonable doubt.

We now approach the only other point raised and argued

in this case, which, in our opinion, merits further consideration. And that point is whether defendant "suffered manifest wrong or injury" by reason of the alleged erroneous refusal of the trial judge to grant the motion of his counsel for a postponement of the trial on the ground that he was not given sufficient time to prepare a defense between the day of his assignment by the court to the day set for trial.

This motion was made some few days before trial and again made at the very beginning of the actual trial. This appeal comes to us both on bill of exceptions and on a certificate of the entire record of the proceedings at trial. Section 136 of the Criminal Procedure act. 2 *Comp. Stat.* 1709-1910, *p.* 1863. Obviously, defendant's counsel invoked, and properly so, the rights accorded those accused in criminal proceedings, under the constitution of our state (article 1, paragraph 8), and those likewise accorded under our federal constitution, articles V, VI and XIV.

*First:* Reduced to their simplest terms these rights here are that the accused was entitled to have, as a matter of right, the assistance of counsel in his defense and that he could not be deprived of his life or liberty without due process of law.

Suffice it presently to note, more will be said on this phase later, defendant had able counsel. Were the constitutional provisions of "due process of law" transgressed? Concisely stated, "the essential elements of due process of law are notice, and an opportunity to be heard, and to defend in an orderly proceeding adapted to the nature of the case." 6 *R. C. L.* 446; *Twining* v. *New Jersey,* 211 *U. S.* 78; 53 *L. Ed.* 97, 111; *Cooke* v. *United States,* 267 *U. S.* 517; 69 *L. Ed.* 767. The notice of hearing and the opportunity to be heard must, of course, be timely and reasonable. *Cooke* v. *United States, supra.*

In order, however, to determine whether defendant's constitutional rights, as aforesaid, were transgressed we must recur to the facts. What are these facts?

As already stated the murder was committed on September 2d, 1934. Defendant was indicted by the grand jury of Camden county on January 18th, 1935; he was arraigned on April 3d, 1935, and was then told by the prosecutor to engage

counsel as the case would be moved at an early date. He did nothing about it; he said he was awaiting financial assistance from his relatives to engage counsel of his own choice. On April 17th, 1935, defendant was brought up before Mr. Justice Lloyd, the presiding justice of that county. This was on a Wednesday. The court carefully, fully and clearly explained the situation to the defendant and impressed upon him the necessity of engaging counsel. The final result of that proceeding was that the case was set down for the following Wednesday, April 24th, and defendant was told that unless he would engage counsel not later than Saturday, April 20th, 1935, the court would assign counsel to defend him. Defendant did not engage counsel within the time designated and thus, on April 20th, 1935, he was brought up before Mr. Justice Lloyd and Judge Frank H. Neutze, of Camden, and the court designated and appointed Mr. John A. Penn, of Camden, as counsel of defendant, and in so doing characterized Mr. Penn as "an experienced and capable member of the bar." The final result of that proceeding was that the case would be moved the following Wednesday unless Judge Neutze, who was to preside at the trial, would on further application grant a continuance. It is only fair to say that the prosecutor fully co-operated with counsel of the defendant in the preparation of his defense. He made witnesses accessible to him; gave him orally, and in writing, immediate answers to the interrogatories served and explained in detail the theory upon which he would try the case.

As a matter of fact at a further conference before Judge Neutze, on apparently an informal application for a continuance, counsel of defendant expressed his willingness to proceed with trial on Wednesday. But on the day set for trial counsel again renewed his application on the ground already stated, for a continuance. In denying this motion, the court, *inter alia,* said:

"* * * I think that it was on Monday morning that you called my office and stated you wanted a bill of particulars from the prosecutor and I suggested that you get in touch with the prosecutor and we would thrash the matter out. You immediately called me back and said the prosecutor

would see us and we both visited the prosecutor's office. At that time the prosecutor was full and frank in his statement as to what his proof would be and you gave some intimation of what your defense might be. When we left that conference, I felt that you were entirely satisfied, the prosecutor having told you his theory of the case, and that you would go ahead and prepare a defense to meet it. That is why I say I am surprised that this application was made this morning for a further postponement. I am of the opinion that the case ought to proceed and I will so order."

The trial commenced on Wednesday, April 24th, 1935, continued on April 25th and, at the request of defendant's counsel the summation was postponed until the following day—the 26th. The jury, as stated, returned a verdict of murder in the first degree without recommending life imprisonment.

*Second:* We, of course, look with favor upon the prompt and efficient administration of all laws particularly the criminal law. We firmly recognize the dangers incident to delay, but we are not unmindful of the like dangers incident to undue haste. It would appear to us that when counsel, under state and federal constitutional provisions, is appointed by the court to defend one accused of crime, especially in a murder case, and that counsel, as an officer of the court, in good faith, represents to the court that he is unable to properly prepare a defense in four days, as here, and asks for a further extension of a reasonable time for the preparation of his defense, that the constitutional provisions of "due process of law" would be better served and satisfied if the adjournment had been granted.

The difficulty, however, in the case at bar is that it has not been made to appear that the defendant suffered "manifest wrong or injury" as a result of the refusal to grant the postponement.

We search in vain, as was said in *State* v. *Lynch,* 103 *N. J. L.* 64; 134 *Atl. Rep.* 760, which on its facts is very similar to the facts of the instant case, for even a "suggestion made to the trial court that there were witnesses in existence who, if called in behalf of defendant, would give evidence support-

ing his plea of not guilty; and, of course, there was no suggestion that the postponement was necessary in order to procure the presence of any such witness. Nor is it now claimed before us that the defendant was harmed as a result of the refusal of the motion to postpone because of the fact that, if it had been granted, he would have been able to produce such witnesses upon the adjourned day. As to the contention that counsel assigned by the court had not had time to properly prepare a defense, an examination of the record of the trial sent up with the return to the writ satisfies us that, even if a postponement had been granted, counsel could not more admirably have defended his client than he did at the trial now under review."

That is precisely the situation here. We merely desire to make the added observation that it is reasonable to assume that, if subsequent investigation disclosed material evidence not available at the trial because of lack of opportunity to discover it, the attention of the trial judge, or our attention, would have been called to it. It is therefore not unreasonable to assume that no such evidence is available, and that if trial be had to-day, no additional witnesses would be available and no additional material evidence could be procured from those who did testify and that counsel could not now more ably defend his client than he did at the trial now under review.

It is well established "that a motion for adjournment is addressed to the discretion of the court and its denial will not lead to a reversal unless it appears from the record that the defendant suffered manifest wrong or injury." *State* v. *Doro,* 103 *N. J. L.* 88; 134 *Atl. Rep.* 611; *State* v. *Lynch, supra; State* v. *Juliano,* 103 *N. J. L.* 663; 138 *Atl. Rep.* 575. There is no such showing in the case at bar.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, JJ. 11.

*For reversal*—None.