STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HARRY SCOTT, PLAINTIFF IN ERROR.

Submitted February 18, 1928—Decided May 14, 1928.

For the plaintiff in error, *J. Victor D'Aloia* (*Harold Simandl,* of counsel).

For the defendant in error, *Joseph L. Smith,* prosecutor of the pleas, and *Joseph E. Conlon,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J. The plaintiff in error was indicted for the murder of one Lorenza Robinson on July 3d, 1927. The jury found him guilty of murder in the first degree, with a recommendation of life imprisonment.

Briefly stated the case of the state was that this woman (decedent) was the mistress of the defendant; that she had left him; that, after threatening to kill her, he went to the house where she was and deliberately fired four shots from a pistol into her body, killing her. His defense, as exhibted

by his testimony, was that, while he was in the house where the shooting occurred, talking to the Robinson woman, one Essley Jones, who was another lover of this woman, came to the room, pushed the woman aside and grabbed hold of the defendant with one hand, and at the same time putting his other hand in his hip pocket; that the defendant, believing his life was in danger from Jones, drew his own automatic pistol; that Jones grabbed the hand that held it, and in the struggle for its possession the pistol went off accidentally, discharging the bullets into the body of the decedent.

We now proceed to examine such of the assignments of error and causes for reversal as have been argued.

The first contention is that the trial court erroneously permitted evidence showing the relations of the defendant with one Anna James after the killing was committed. Assuming, without deciding, that this was incompetent testimony, counsel does not attempt to show that its admission was or might have been prejudicial to the defendant in making his defense on the merits, and unless it had that effect (which plainly it did not), the action of the trial court affords no ground for reversal. *State* v. *Yarrow, ante, p.* 512.

It is next said that the court erred in refusing to permit a pistol expert to testify in how many seconds could six or seven shots be fired if the hand holding the pistol is "gripped" by another hand and there was a struggle to get the pistol. It is true that the court originally refused to permit this testimony, but immediately thereafter substantially the same question was put to the same witness and was answered. That, of course, cured the error, if it was an error. *Dayton* v. *Boettner,* 82 *N. J. L.* 421.

The next point is that the court erred in charging the jury that "even if the circumstances be such as to require the use of force to repel the assault, he would be inexcusable if he carried his defense beyond the bounds of reasonable necessity or the reasonable appearance of necessity." The latter clause of this instruction is criticised as erroneous in law. It is enough to say that it appears to be in substantial compliance with the true rule which was laid down in *State* v. *Bonofiglio,* 67 *N. J. L.* 239.

It is next contended that the trial judge erred in defining murder in the first degree. Not so. He instructed the jury that "if defendant's intent was to kill the deceased girl and the killing was willful and deliberate and with premeditation, then he is guilty of murder in the first degree." That instruction certainly comprehended all of the essential elements of that crime. He then added that by "willful was meant voluntary, of his own will." The defendant's criticism of that latter statement is without merit. The word "willful" means intentional; what a man wills to do. And certainly the trial judge's definition of the crime in question was not in any way prejudicial to the defendant, since the defendant, in effect, admitted doing the fatal shooting, but testified that the shots were fired accidentally during a struggle for the possession of the pistol.

It is further contended that the court erred in not charging the request submitted on behalf of the defendant that if the jury had a reasonable doubt as to whether he was guilty of manslaughter or murder, that doubt must be resolved in his favor. In so far as this request called for an instruction upon reasonable doubt it was fully complied with in substance and effect by what the judge had already said in his charge, and hence its refusal was not erroneous. *Daggett* v. *North Jersey Street Railway Co.,* 75 *N. J. L.* 630.

But that request was coupled with another one, which defined manslaughter as follows: "Manslaughter is the intentional killing of a human being in a sudden transport of passion or heat of blood, upon a reasonable provocation, without malice." The court charged this definition, and of that, of course, the defendant makes no complaint. He does, however, complain that the judge then went on to say: "The defendant does not say, however, that he was in any transport of passion or heat of blood, or that the killing was intentional. He says that the gun was discharged unintentionally while he was engaged in self-defense." But that was a correct statement of the testimony of the defendant, and, being a correct statement of it, the defendant cannot complain.

The defendant contends, however, that the effect was a refusal to submit the question of manslaughter to the jury.

Very well. If the jury accepted the proofs submitted by the state, defendant was evidently guilty of murder in the first degree. If, on the other hand, they believed his story, he was (as the judge distinctly charged) not guilty of a criminal homicide, since he testified repeatedly and unequivocally that he did not intend to shoot and that the pistol went off accidentally. In either aspect of the proofs there was nothing upon which to base a verdict of manslaughter, and this being so, the court very properly refused to submit that question to the jury. This is the doctrine of *State* ·v. *Fiore,* 93 *N. J. L.* 362.

Other assignments are directed at the refusal of the court to charge certain requests. These requests were not specifically charged, but so far as they were proper, they were charged in substance and effect. The defendant, therefore, as we have already pointed out, has no just cause of complaint in this respect.

Lastly, it is argued that the verdict is against the weight of the evidence. We think that it is not. We think that the evidence quite plainly justified the jury in finding that this was a ·willful, deliberate and premeditated killing. As a matter of fact, the testimony disclosed beyond any reasonable doubt that the defendant and the deceased were living together until a few days before the murder; that they had been quarrelling; that four days before the murder defendant assaulted deceased and she went to the police for the purpose of making a complaint against him; that after the separation he tried to get her to return to him; that she refused; that defendant during all or most of this period carried on his person the pistol with which he eventually killed deceased; that on at least three occasions within a week of the killing defendant expressed his intention of killing deceased; that he was alone in the kitchen with deceased on July 3d, 1927, at the time of the killing; that defendant's pistol was fired seven times— four of the bullets entering the body of the deceased. In these circumstances the jury very naturally disregarded the defendant's story of an accidental killing.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 16.

*For reversal*—None.