STATE OF NEW JERSEY, PLAINTIFF, v. J. OWEN GRUNDY, DEFENDANT.

Submitted May 6, 1947—Decided September 16, 1947.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the State of New Jersey, *Horace K. Roberson,* Prosecutor of the Pleas of Hudson County, and *William P. Gannon,* Assistant Prosecutor.

For the defendant, *Maurice C. Brigadier.*

The opinion of the court was delivered by

. CASE, CHIEF JUSTICE. J. Owen Grundy was indicted by the December, 1944, Hudson County grand jury for the offense of perjury charged as having been committed before the April, 1943, grand jury. The indictment alleged that

while the 1943 grand jury was considering a complaint against Grundy and John R. Longo for fraudulent alteration of election records Grundy "did appear and was produced as a witness for and on behalf of the State of New Jersey and against the said John R. Longo;" that Grundy took oath that the evidence which he should give between the state and Longo should be the truth, the whole truth and nothing but the truth; that Grundy was asked whether, in association with Longo, he had altered the voting records of Longo and whether he, the witness, had ever before seen a certain record; that the witness answered both questions in the negative; that the answers were given knowingly, falsely, corruptly and willfully; that the inquiries were material and that Grundy did thereby commit willful and corrupt perjury.

The movant advances as reasons why the indictment should be quashed that public policy so requires; that the indictment is violative of the right of the accused, both at common law and under the statute, to protection against self-incrimination; that the indictment fails to state that the defendant testified voluntarily before the April, 1943, grand jury; that there was no evidence before the December, 1944, grand jury upon which the indictment could be predicated; and that the grand jury manifested personal bias, prejudice, partiality and partisanship against the defendant Grundy.

This state has no constitutional provision regarding immunity of a witness from answering questions, the answers to which tend to incriminate him. The common law rule that no person can be compelled to be a witness against himself is still the rule of our courts in the admission of evidence in criminal cases. *State* v. *Miller,* 71 *N. J. L.* 527, 532; *State* v. *Zdanowicz,* 69 *Id.* 619, 622. It is reflected in our statute, *R. S.* 2:97-6, *et seq.,* the pertinent provision of which is: "(7) No witness shall be compelled to answer any question if the answer will expose him to a criminal prosecution or penalty or to a forfeiture of his estate." The immunity is a privilege which may be waived, and it is for the witness to claim his privilege of exemption from testifying in disparagement of himself if he so desires. *Fries* v. *Brugler,* 12 *Id.* 79; *State* v. *Mohr,* 99 *Id.* 124.

There is nothing in the record to indicate that Grundy was under any compulsion or that he did not appear voluntarily and testify to that which is now charged against him. The movant contends that compulsion is implicit in the words of the indictment—Grundy "did appear and was produced as a witness for and on behalf of the State of New Jersey and against the said John R. Longo"—but we do not give those words that interpretation. The recital in the indictment is that Grundy was sworn to give evidence between the state and Longo. If the inquiry was indeed being made in the cause of State *v.* Longo, it required no voluntary action on Grundy's part to appear before the grand jury. If, on the other hand, there was a ruse by which it was sought to induce Grundy, unwittingly, to give evidence against himself, that is not made to appear before us. We think that the indictment is not faulty on its face in that it did not negate the use of compulsion or allege the voluntary appearance of the witness.

It is a recognized policy in the law that an accomplice or co-defendant who assists the state by giving evidence against another may receive some beneficial recognition, the form of which is not thoroughly established. *State* v. *Graham,* 41 *N. J. L.* 15. But the present indictment is not such a circumstance; it sets up a crime distinct from the one in which Grundy and Longo are said to have been associated and with respect to which Grundy might expect to receive leniency because he gave assistance in the state's case against his accomplice. In the latter case there was a joint indictment against Grundy and Longo for altering public records. Grundy pleaded guilty to that indictment and testified at the trial against Longo. Grundy's assistance to the state was rewarded in the fact that sentence upon him was suspended whereas Longo was sentenced to the state's prison for a term of years. We are asked, and decline, to declare as a matter of law that public policy prohibits an indictment for perjury against one who is a co-defendant under an indictment for another crime and assists in the conviction of his accomplice in that other crime. It is not, and could hardly be, argued that Grundy, in committing the crime of perjury, was acting

by way of assistance to the state. Nor is it said that the state gave assurance that prosecution for the perjury would not be had.

In the absence of impropriety by the grand jury, an indictment found upon illegal evidence or without legal evidence cannot be taken advantage of by the defendant on a motion to quash. *State* v. *Dayton,* 23 *N. J. L.* 49; *State* v. *Garrison.* 130 *Id.* 350.

The contention of the movant that the indictment should be quashed because of the alleged bias and prejudice of the grand jury is quite nullified by the rational conclusion that Grundy did swear falsely either before the grand jury or at the trial of Longo before the petit jury. That conflict of testimony, and the conclusion reasonably flowing therefrom, is not chargeable to the bias of jurors. We need not hypothesize upon whether or not there were grounds upon which the jury could indict. Reasonable grounds are apparent. We are of the opinion that it was for the grand jury to appraise the evidence before it and that we should not interfere with a trial of the indictment on its merits. *Cf. State* v. *Donovan,* 132 *N. J. L.* 319, 322.

The movant has followed the unusual procedure of making common cause with four other sets of defendants who were indicted for various offenses by the same December, 1944, grand jury. and who, under writs of *certiorari,* are prosecuting their several motions to quash their respective indictments. Voluminous depositions and exhibits were received relating to the drawing and the composition of the grand jury and are printed in three volumes captioned "Common Depositions" and "Common Exhibits." The various sets of defendants, movants here in their respective cases, not only present us with their several briefs grounding in their individual states of case, but also a brief "in common" deduced from said combined proofs. The method of taking and presenting the consolidated proofs is understandable. The submission of a common brief is confusing to the court because of the varying situations of the several defendants. However, we have studied the same and find no substance therein with regard to any of the defendants.

The points argued are that the jury commissioners knew that their certifications were false in fact, that the grand jury lists for the terms of September and December, 1944, operated to prejudice the defendants, that the jury commissioners unlawfully and improperly superimposed additional qualifications in determining what persons were liable to grand jury duty, and that the commissioners arbitrarily excluded persons on a political basis in violation of the Fourteenth Amendment to the United States Constitution and of article I, paragraph 9 of the New Jersey Constitution.

Tables are produced showing populations of the county, of the several municipalities therein and of the various wards; and percentages are calculated indicating what fractional representation would go to each ward on a strict mathematical calculation and what representation, if it may be called that, was actually had in the jury list as drawn. Discrepancies appear, and it is argued that these inequalities were known to the commissioners, which we believe is true; and, further, that the inequalities were deliberately accomplished for the purpose of loading the grand jury with persons who entertained an animus against the defendants and would, because of their bias, and not because of the showing of guilt, vote for indictments, and of that we are not satisfied. On the contrary, we believe that such irregularities as exist fail to show that the exercise of discretion constituted an abuse. The job of the commissioners in producing an impartial grand jury was not an easy one. For emphasis, we note the names of the defendants in the several other indictments covered by the common brief. They are: William J. McGovern, sheriff of the County of Hudson; Edward J. McFeeley, chief of the police department of the City of Hoboken, and Bernard J. McFeeley, an inspector therein; Harry A. Jenkins, chief of police of Union City, and Edward J. Mescall, deputy chief thereof; Robert A. O'Brien, clerk and executive assistant to the Board of Tax Commissioners of Jersey City, William P. Black, deputy city collector, and M. James McLaughlin, sub-assessor of the same city. If the listing of those names were not enough to indicate the strong influence of the defendants in their several centers and throughout the County

of Hudson, the reading of the proofs would be. It was for the jury commissioners to endeavor to submit the names of persons who would not be immovably prejudiced against, and also who would not be immovably prejudiced in favor of, any persons likely to be investigated by the inquisition. That was indeed a task. Impartiality works both ways.

The pertinent rule has been reviewed too lately to require much detail here. The general rule is that statutory provisions are directory only, and that irregularities are no ground of challenge unless they are such as plainly operated to prejudice the challenging party. *State* v. *Simmons,* 120 *N. J. L.* 85. The commissioners are allowed latitude in selecting their method of choice in the absence of proof that they were actuated by a bad motive. The court should sparingly inquire concerning the formalities relating to the finding of an indictment by the grand jury. The due administration of justice requires that, except in the most flagrant instances, this court should not interfere with the prosecution of crime charged by a grand jury. *State* v. *Biehl,* 135 *Id.* 268. Particularly so, when the time is too late for the finding of a new indictment. *State* v. *Davidson,* 116 *Id.* 325. Our examination of the proofs leads us to the conclusion that the defendants were not prejudiced in any of their rights by the acts or omissions of the commissioners, and that the commissioners were not actuated by unlawful design.

We find no adequate ground in either brief for the quashing of the indictment against Grundy.

It is now between two and three years since the several indictments above mentioned were found and returned, and the respective trials are not yet in sight; this, because of the proceedings directed against the indictments under permission of the several writs of *certiorari.* Meanwhile, witnesses die, memories weaken, and other incidents to a fair and full trial drift away. Squarely on that point we quote the words of Mr. Justice Kalisch in *State* v. *Bolitho,* 103 *N. J. L.* 246; affirmed on his opinion, 104 *Id.* 446:

"It will not be out of place to state here that for more than fifty years it was the fixed practice to disallow an application for a writ of *certiorari* to remove an indictment into

the Supreme Court for the purpose of moving there to quash it, unless the prosecutor of the pleas consented to its removal, or unless it appeared upon the face of the indictment that it was clearly defective in substance and a motion to quash had been made in the court of the first instance, which motion was denied.

"It is evident that such a course avoids delay in the trial of criminal cases, without depriving a defendant of any legal right he may have to question the validity of the indictment against him, on the trial and upon appeal, of course, if he pursues the practice which obtains in that respect."

The motion in the instant case will be denied, and the writ of *certiorari* will be dismissed, with costs.