THERESA MESZAROS AND BALINT MESZAROS, PLAIN-
TIFFS-RESPONDENTS, v. CAROLINA GRANSAMER, DE-
FENDANT-APPELLANT.

Argued December 3, 1956—Decided January 14, 1957.

Mr. *John C. Stockel* argued the cause for the appellant.

Mr. *Francis M. Seaman* argued the cause for the respondents (*Messrs. Seaman and Seaman,* attorneys).

The opinion of the court was delivered by

JACOBS, J. This is an appeal from a judgment for the plaintiffs pursuant to a verdict of the jury in an automobile accident case. We certified the matter while it was pending in the Appellate Division.

On January 28, 1954 the plaintiff Theresa Meszaros was a passenger in an automobile being driven in a southerly direction along Route 1 in Middlesex County. The defendant was then the owner and operator of an automobile which, while being driven in a northerly direction, crossed the center safety island and collided with the automobile in which Mrs. Meszaros was a passenger. She was injured and she and her husband thereafter instituted their action in the Superior Court, Law Division, Middlesex County. After trial the jury returned its verdict for $7,000 in favor of Mrs. Meszaros and for $3,000 in favor of her husband. A motion for new trial was denied and thereupon the defendant filed her notice of appeal to the Appellate Division. However, she failed to file her brief and appendix in time and, in response to a motion to dismiss, the Appellate Division directed that she file her brief and appendix by April 2, 1956 and pay costs and a counsel fee. On April 2, 1956 the defendant filed a brief and appendix but the plaintiffs renewed their motion to dismiss on the ground that essential parts of the record had been omitted. The Appellate Division declined to dismiss the appeal but directed that

the appeal be confined to two points, namely (1) whether the court erred when it directed that the trial proceed before a so-called "B-Panel" of jurors, and (2) whether it erred in failing to consider on the defendant's motion for a new trial "the improper injection into evidence by plaintiffs' attorney improper items of injury and damage." The defendant does not now complain about this order of the Appellate Division; and in any event she would not be in any position to raise additional points in view of her representation to the Appellate Division that she had abandoned all points but the two aforementioned.

The first and main contention advanced by the defendant is that she is entitled to a reversal because the "B-Panel" of jurors from which her jury was selected was not drawn in compliance with *N. J. S.* 2*A* :71–8. It is not disputed that the general panel of jurors in the county was drawn strictly in accordance with *N. J. S.* 2*A* :71–1 *et seq. Cf. Patterson v. State,* 48 *N. J. L.* 381 (*Sup. Ct.* 1886). However, pursuant to an oral direction by the late Ralph S. Smalley, assignment judge of the county, the general panel was divided into A and B parts or panels to accommodate courts sitting simultaneously. Such division is expressly provided for by *N. J. S.* 2*A* :71–8 which states, however, that where "the general panel is to be so divided, each separate panel shall be drawn from the box in open court" under the direction of the assignment judge and in his presence or in the presence of a judge designated by him. This procedure was not followed; instead the practice in the county was to have the court officer take the names on the list of each general panel and place them alternately in "A-Panel" and "B-Panel." This practice has already been changed by appropriate administrative direction, and divisions of the general panels are now being constituted in the county in strict accordance with *N. J. S.* 2*A* :71–8 and pursuant to formal orders of the assignment judge.

It seems entirely clear that in the instant matter the defendant suffered no actual harm or prejudice in the departure from *N. J. S.* 2*A* :71–8. The members of the gen-

eral panel were fully qualified and properly chosen jurors. The subdivision entailed no discretionary selection but the mechanical placement of the jurors alternately in "A-Panel" and "B-Panel"; and it was not done with any ulterior or improper motive or for this proceeding alone but was done pursuant to a long standing uniform and open practice. Indeed, at oral argument counsel for the defendant acknowledged that he had known of the practice and its irregularity and had participated in many prior cases without mentioning it, but had decided to raise the question in the instant case because of the danger of an adverse verdict in substantial amount. In fact, he waited until after 12 jurors had taken their seats in the jury box (although before any jurors were challenged or sworn) to make an oral motion addressed to the propriety of the manner in which the "B-Panel" was selected. For present purposes we shall assume that the motion was timely (see *R. R.* 4:48–3), although it would have been much fairer if there had been a written motion (*cf. State v. Dedge,* 101 *N. J. L.* 131, 134 (*E. & A.* 1925)) at an earlier time when the irregularity could have been obviated without any administrative difficulties. See *Smith v. Smith,* 52 *N. J. L.* 207, 208 (*E. & A.* 1889) where the court, in rejecting a challenge to the array, said:

"This case was tried by a struck jury, and at the trial there was a written challenge to the array, because one of the 48 jurymen selected by the judge was dead; another was a fireman, exempt by law; and a third, whose name was on the panel of 24 jurors struck for the trial, was not summoned. The challenge was overruled, and an exception taken. There was no objection to the jury until the trial was called. Had the attention of the court been directed to these particular cases before that time, other names might have been supplied, or any omission of duty on the part of the summoning officer corrected. There is no allegation that there was any design or collusion for the purpose of affecting the trial, or that the defendants were prejudiced, and the statute makes ample provision for the required number of jurymen by an award of tales to call others until the panel is filled for the trial. *Patterson v. State,* 48 *N. J. L.* 381, [19 *Vroom* 381]; *King v. Hunt,* 4 *Barn. & Ald.* 430."

184

It is, of course, vital that juries be selected in a manner wholly free from taint and suspicion and that courts be on the lookout to prevent the "subtle undermining of the jury system." *Thiel v. Southern Pacific Co.,* 328 *U. S.* 217, 225, 66 *S. Ct.* 984, 988, 90 *L. Ed.* 1181, 1187 (1946). To that end the pertinent practice safeguards in the statutes and court rules must be carefully observed and where necessary to insure future observance or to vindicate a fundamental principle courts should not hesitate to reverse even in the absence of harm or prejudice. But in the instant matter there is no taint or suspicion and there is no need to concern ourselves with future observance which has already been assured or the vindication of a fundamental principle which is no longer involved. Indeed, the single question now before us is whether substantial justice requires that there should be a new trial between the parties in this private litigation because of the error in the manner of subdividing the general panel, even though the error did not impair the fairness of the trial or the justness of the verdict and was in no realistic sense harmful or prejudicial to the appellant. See *R. R.* 1:5–3(*b*) which now governs all civil appeals and provides as follows:

"Neither error in the admission or the exclusion of evidence, nor error in any ruling or order or in any action taken or omitted by the court, any administrative agency or public official or by any of the parties, nor any other matter, whether or not involving the exercise of discretion, shall constitute ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment, order or determination, unless a denial of the relief sought appears to the court to be inconsistent with substantial justice."

*Cf. R. R.* 4:63–1; *R. R.* 1:5–1.

Dean Wigmore has reviewed fully the history and status of the rule that harmless or nonprejudicial errors do not call for a new trial. See 1 *Wigmore (3rd ed.* 1940), 364. *Cf.* 7 *Moore, Federal Practice (2d ed.* 1955), 1001; *Note, "The Harmless Error Rule Reviewed,"* 47 *Colum. L. Rev.* 450 (1947). He points out that in the well-known case of

*Crease v. Barrett,* 1 *C. M. & R.* 919, 149 *Eng. Rep.* 1353
(*Ex.* 1835), the Court of Exchequer departed from the
earlier orthodox English rule and paved the way for the
view that an erroneous evidential ruling generally creates
*"per se"* the right to a new trial. The Exchequer rule,
though it had a seriously discrediting effect on the ad-
ministration of justice, was adopted early in many Amer-
ican jurisdictions and was applied to erroneous rulings
in fields other than evidence. In England the Exchequer
rule was obviated in civil cases by the Judicature Act of
1875 and in the United States reforming state legislation
was widely enacted. Thus New York's famous Field Code
of 1848 provided that in every stage of an action the court
shall disregard "any error, or defect in the pleadings or
proceedings, which shall not affect the substantial rights
of the adverse party"; it was followed by enactments of
similar purport in many other states. See 1 *Wigmore,
supra; Hebert, "The Problem of Reversible Error in
Louisiana,"* 6 *Tul. L. Rev.* 169 (1932); *Calvert, "The
Development of the Doctrine of Harmless Error in Texas,"*
31 *Texas L. Rev.* 1 (1952). Our own Practice Act of 1912
contained an express prohibition of reversal for procedural
error except where, after examination of the entire case, it
appeared "that the error injuriously affected the substan-
tial rights of a party." See *L.* 1912, *c.* 231, *p.* 382; *R. S.*
2:27–241; *R. S.* 2:27–363. However, long before the act
of 1912 there were judicial expressions in our State which
broadly recognized that procedural error at the trial level
should not call for reversal on appeal except where justice
so dictates. In *Ruckman v. Bergholz,* 37 *N. J. L.* 437, 441
(*E. & A.* 1874), Chancellor Runyon acknowledged that a
judgment should not be reversed for an error, however mani-
fest, "which has done no injustice," and in *Den ex dem.
Steelman v. Steelman,* 16 *N. J. L.* 66, 68 (*Sup. Ct.* 1837),
Chief Justice Hornblower noted that "where justice has
been done by a verdict" there should be no reversal even
though there has been a "mis-direction" by the trial judge.

Since the creation of our new judicial system under the

1947 State Constitution our courts have placed renewed emphasis on justice as the polestar; they have consistently subordinated procedural requirements in civil cases to their proper role of facilitating justice between the parties and have repeatedly refused on appeal to reverse for trial errors which did no real harm or injustice to the losing party. See *R. R.* 1:5–3(*b*); 1 *Waltzinger, New Jersey Practice* 86 (1954). *Cf. Klotz v. Lee,* 21 *N. J.* 148, 154 (1956); *Miller v. Trans Oil Co.,* 18 *N. J.* 407, 414 (1955); *Terminal Const. Corp. v. Bergen County, etc., Dist. Authority,* 18 *N. J.* 294, 339 (1955); see also *In re Magura's Estate,* 19 *N. J. Super.* 233, 237 (*Cty. Ct.* 1952); *New Jersey Highway Authority v. Wood,* 39 *N. J. Super.* 575, 580 (*App. Div.* 1956), certification denied 21 *N. J.* 551 (1956). A comparable course has been followed even in criminal cases which historically have been dealt with in separate statutes and are now governed by the independent provisions of *R. R.* 1:5–1. See 1 *Waltzinger, supra* 75; *R. S.* 2:195–16; *L.* 1898, *c.* 237, *p.* 915; *Nixon's Digest* (*2d ed.* 1855), 189; *State v. Witte,* 13 *N. J.* 598, 612 (1953), *certiorari* denied 347 *U. S.* 951, 74 *S. Ct.* 675, 98 *L. Ed.* 1097 (1954); *State v. Orecchio,* 16 *N. J.* 125, 129 (1954).

In the *Witte* case this court, in an opinion delivered by Justice Heher, declined to reverse a conviction upon a showing of nonprejudicial errors and aptly summarized *R. R.* 1:5–1 which deals with criminal appeals:

"By rule of court, error in the denial of any matter resting in discretion, or in any other ruling or order made in the course of the trial, is not cause for reversal unless it is made to appear from the entire record of the trial proceedings that the accused 'thereby suffered manifest wrong or injury.' And it is also provided by the same rule that no judgment given upon an indictment shall be reversed for any defect of form or for 'any error' except such as shall have 'prejudiced the defendant in maintaining his defense upon the merits.' *R. R.* 1:5–1. Such was the principle of section 136 of the old Criminal Procedure Act, enlarging the review on strict error. 2 *Comp. Stat.* 1910, *p.* 1863, *sec.* 136; *R. S.* 1937 2:195–16. *Vide State v. Yarrow,* 104 *N. J. L.* 512 (*E. & A.* 1928); *State v. Scott,* 104 *N. J. L.* 544 (*E. & A.* 1928); *State v. Lynch,* cited *supra* [103 *N. J. L.* 64]; *State v. Littman and*

*Weinfeld*, 86 *N. J. L.* 453 (*Sup. Ct.* 1914), affirmed 88 *N. J. L.* 392 (*E. & A.* 1915) ; *State v. Lang*, 75 *N. J. L.* 1 (*Sup. Ct.* 1907), affirmed *Id.*, 75 *N. J. L.* 502 (*E. & A.* 1907)."

In 3 *Am. Jur., Appeal and Error* 600 (1936) the editors point out that the general principle "that error to be ground for reversal must be prejudicial" applies to matters relating to the jury including the procedure in its summoning and impaneling. And in 50 *C. J. S., Juries,* § 164, *p.* 890 (1947) substantially the same result is reached on the ground that procedural directions (embodied in statutes or otherwise) for summoning and impaneling the jury are ordinarily directory and departures therefrom do not call for reversal on appeal in the absence of prejudice or manifest injury. See 1 *Thompson, Trials* (*2d* ed. 1912), 37; *Hilliard, New Trials* (*2d* ed. 1872), 51; *Thompson and Merriam, Conduct of Juries* (1882), 112, 120; *Graham, New Trials* (*2d* ed. 1855), 34; 1 *Waterman, New Trials* (1855), 159. A long line of New Jersey cases has voiced approval of this latter approach. See *Gardner v. State*, 55 *N. J. L.* 17, 21 (*Sup. Ct.* 1892), affirmed 55 *N. J. L.* 652 (*E. & A.* 1893); *State v. James*, 96 *N. J. L.* 132, 142 (*E. & A.* 1921); *State v. Calabrese*, 107 *N. J. L.* 115, 116 (*E. & A.* 1930); *State v. Simmons*, 120 *N. J. L.* 85, 88 (*E. & A.* 1938); *In re Housing Authority of City of Newark*, 126 *N. J. L.* 60, 63 (*E. & A.* 1941); *State v. Grundy*, 136 *N. J. L.* 96, 101 (*Sup. Ct.* 1947); *State v. Stewart*, 2 *N. J. Super.* 15, 21 (*App. Div.* 1949). But cf. *State v. Lapp*, 84 *N. J. L.* 19, 21 (*Sup. Ct.* 1913); *State v. Rombolo*, 89 *N. J. L.* 565, 567 (*E. & A.* 1916). In the *Gardner* case the court, in declining to reverse a conviction for larceny, rejected a challenge to the array even though the sheriff had failed to comply with a statutory requirement that he maintain in his office a current list of the qualified jurors from which the general panel was to be drawn; in the course of his opinion for the court Justice Depue expressed the general rule to be that "statutory provisions respecting the preparation of lists and the drawing of the panel are regarded as directory only, and that irregularities therein are no ground of challenge,

unless they are such as plainly operated to the prejudice of the challenging party." Similar language appears in many of the later cases. See *e. g., State v. Simmons, supra* (per Trenchard, J.) ; *State v. Grundy, supra* (per Case, C. J.). *Cf. State v. Cioffe*, 128 *N. J. L.* 342, 347 *(Sup. Ct.* 1942), affirmed 130 *N. J. L.* 160 *(E. & A.* 1943). In the *Simmons* case the general panel had been selected from persons whose names began with the letters M, N, O, P and Q; the Court of Errors and Appeals found no irregularity but indicated that "even if there was" there was no basis for reversal in the absence of a showing of prejudice.

In *State v. Rombolo, supra,* the court reversed a first degree murder conviction because the sheriff had, without notifying court or counsel, placed in the box only 31 of the special panel of 48 jurors which had been drawn from the general panel; Chief Justice Gummere referred to the importance to the defendant of having all of the names from which the jury would be selected placed together in the box and found that the sheriff's erroneous conduct had "worked to the manifest injury of the defendant." In contrast reference may be had to the much later case of *State v. Calabrese, supra,* which was likewise a conviction of murder in the first degree; there the Court of Errors and Appeals unanimously refused to reverse even though it assumed, for purposes of its holding, that there had been error in drawing from a part of the general panel rather than from the entire general panel. In the course of his opinion Justice Lloyd took the position that since all of the names in the box were those of potential jurors who were presumably qualified, the defendants could not assert prejudice because other qualified jurors were omitted; and he expressed the view that "harmless irregularities, even errors, cannot be availed of to defeat the results of a fair trial." Since the case before us is a civil matter, we have no present occasion to pass on the precise scope of the harmless error doctrine in first degree murder cases. In *State v. Wynn,* 21 *N. J.* 264, 271 (1956), Justice Oliphant aptly suggested that where the life of an accused is at stake a stricter approach may be warranted;

and both the Legislature and the courts have repeatedly displayed their solicitude for human life by imposing special procedural requirements and insisting upon their rigid observance. See *e. g., N. J. S.* 2A:74–9 where the Legislature prohibited waiver by the defendant in a murder case of the provisions for the drawing and service of the list of jurors, and *State v. Greely*, 11 *N. J.* 485 (1953), where the court reversed a murder conviction because the form of the jury's verdict did not comply fully with the applicable statute. *Cf. Baker, "Reversible Error in Homicide Cases,"* 23 *J. Crim. L. & Criminology* 28 (1932); *Note, "Reversible Error in Murder Cases and the Pennsylvania Supreme Court,"* 99 *U. Pa. L. Rev.* 814 (1951); *Note, "Criminal Appeals Where No Substantial Miscarriage of Justice,"* 197 *L. T.* 217, 218 (1944).

Throughout history the ever present goal has been to attain a better system of justice which affords to every person a fair, inexpensive and speedy trial, unshackled by needless technicality and formalism. This goal is frustrated by every new trial for a procedural error which did not impair the fairness of the first trial nor the justness of the original verdict. In this day there should be ready recognition of the absence of justification for such new trial except in the unusual instance where it is really essential to insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle. It will not suffice that we have solemnly set forth in a formal practice rule (*R. R.* 1:5–3(*b*)) that a new trial will not be granted "unless a denial of the relief sought appears to the court to be inconsistent with substantial justice"; as Professor Sunderland properly pointed out almost 30 years ago, we must go further and always interpret and apply the rule with sympathetic understanding that trial procedure is not the end in itself but is merely the vehicle for attaining justice:

"The problem of prejudicial error is a problem in professional psychology. No rules can be framed which will solve it, for rules can only be drawn in general terms, and it is in the interpretation

of the rules that the difficulty comes * * * The only permanent and effective cure for technicality in this respect is a better conception of the purpose of all procedure. In England in the year 1924 not a single case from the King's Bench Division was reversed for error in admitting or excluding evidence. That simple fact explains why the intricacies of practice no longer annoy the English lawyer. And it explains the success of the whole judicial establishment. Procedure has become a practical means to an end. Its rules are no more exacting than efficiency requires. * * * Every judgment which is reversed merely because obtained contrary to rules, shows a failure of the courts to serve the main purpose of their existence." Sunderland, "The Problem of Appellate Review," 5 Texas L. Rev. 126, 146 (1927), as quoted in 7 Moore, supra, at 1002.

■ We find no just basis for reversal in the appellant's first point and come now to her second contention which relates to the injection into evidence of allegedly "improper items of injury and damage." After the accident, X-rays of the plaintiff Theresa Meszaros were taken and their readings which became part of the hospital record indicated, inter alia, that there were fractures of the eighth and ninth ribs. When the plaintiff Theresa Meszaros answered interrogatories as to the extent of the injuries suffered she referred to "fractures of the left eighth and ninth ribs in the anterior line." At the trial Dr. Wiesenfeld, testifying for the plaintiffs, examined the X-rays and stated that "the eleventh, tenth, ninth and eighth ribs show breaks—the most severe, of course, is the eighth and ninth." Counsel for the defendant objected to the reference to the tenth and eleventh ribs because they were not mentioned in the answers to interrogatories; counsel for the plaintiffs then stated that the answers to interrogatories were based on the hospital record and that he was unaware of what the X-rays actually showed until the preceding day. However, he did not bring the discrepancy to the trial court's attention before calling upon Dr. Wiesenfeld to testify nor did he move for amendment of the answers to the interrogatories as contemplated by R. R. 4:23-12. See Ross v. Ross, 35 N. J. Super. 242, 250 (Ch. Div. 1955); 4 Moore, Federal Practice (2d ed. 1950), 2344; 2 Schnitzer

*and Wildstein, N. J. Rules Serv.,* AIV–681. The trial court sustained the defendant's objection and ruled that the injuries to the ribs other than the eighth and ninth could not be shown. Thereupon counsel for the defendant requested that the jury and the witness be appropriately instructed and at that point the trial court told the jury that the only rib injuries they were to consider were those relating to the eighth and ninth ribs.

█ The defendant contends that notwithstanding the court's ruling and instruction in her favor she is entitled to a new trial because of the doctor's original reference to the tenth and eleventh ribs. We consider her contention to be wholly without merit. Plaintiffs' counsel should have brought the matter to the trial court's attention before the doctor's testimony was called for and this might have led to an amendment of the answers to interrogatories with a short continuance to enable such further inquiry and preparation as the defendant's counsel might reasonably require. However, since the testimony came without prior warning, the trial court immediately sustained the defendant's objection and clearly instructed the jury to disregard the matter complained about. We assume that the jury did so and there is no suggestion whatever in the record to the contrary; under the circumstances a new trial would be uncalled-for under the enlightened principle embraced in *R. R.* 1:5–3(*b*). See *Rempfer v. Deerfield Packing Corp.,* 4 *N. J.* 135, 149 (1950); *Eggert v. Binder,* 1 *N. J. Misc.* 555, 556 (*Sup. Ct.* 1923), affirmed 100 *N. J. L.* 174 (*E. & A.* 1924).

Affirmed.

WEINTRAUB, J. (concurring). The characterization as directory of a statute which does not purport to confer discretion does not mean that the officials chargeable thereunder are free to ignore it. On the contrary, so far as the officials are concerned, the statute is mandatory. 3 *Sutherland, Statutory Construction* (3*d* ed. 1943), sec. 5801, *p.* 76; *In re Smock,* 5 *N. J. Super.* 495, 501 (*Law Div.* 1949). It is with respect to the impact of a violation upon the result

of the trial that the characterization "directory" is judicially (sometimes legislatively) applied, and then merely as a succinct statement that the violation in question did not infect the verdict.

I hesitate to subscribe to a blanket rule that all provisions relating to the selection of a jury are directory in the sense stated, or that absent an affirmative showing of prejudice there can never be a reversal except to vindicate a principle. Despite the breadth of language frequently used, the authorities, if measured in terms of results reached, do not go that far. See 3 *Sutherland, Statutory Construction* (*3d ed.* 1943), *sec.* 5825, *p.* 122; 1 *Thompson, Trials* (*2d ed.* 1912), *secs.* 33–4, *pp.* 37–41; *Abbott, Civil Jury Trials* (*5th ed.* 1935), *sec.* 65, *p.* 137; *Abbott, Criminal Trial Practice* (*4th ed.* 1939), *secs.* 182–3, *pp.* 331–338; *Busch, Law and Tactics in Jury Trials* (1949), *secs.* 87–8, *pp.* 133–7; 50 *C. J. S., Juries,* § 164, *p.* 890; 31 *Am. Jur., Jury, sec.* 77, *p.* 611. Rather, it seems to me that where the objection is timely made the test is whether the violation goes to the essence of the selection system, which usually means whether what was done or omitted operated to remove or to cast grave doubt upon the intended assurance of a fair and impartial jury. If it does, the violation may well be deemed to be prejudicial *per se,* especially if in the nature of things it is impossible to establish or exclude more specific prejudice, on an inquiry into the subject would necessarily lead to the kind of exploration of a juror's mental operations which is proscribed for greater reasons of public policy. *State v. Kociolek,* 20 *N. J.* 92 (1955). Perhaps the expressions in this area would be less divergent than superficially appears if all started with a common conception of what constitutes a showing of prejudice.

I agree the violation here involved should not lead to a reversal, but I would reach that result on the test suggested above.

Mr. Justice BURLING has authorized me to state that he concurs in the views expressed herein.

BURLING and WEINTRAUB, JJ., concurring in result.

For *affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING, JACOBS and WEINTRAUB—5.

For *reversal*—Justices HEHER and OLIPHANT—2.